## JOHN ELLIS v. THE ACADEMY OF MUSIC.

ERROR TO THE COURT OF COMMON PLEAS NO. 4, OF PHILADELPHIA COUNTY.

Argued January 10, 1888—Decided October 1, 1888.

After a verdict and judgment in an action charging the erection of a nuisance on a date certain and its maintenance to the date of bringing the suit, the plaintiff brought a second action for the continuance of the same nuisance, but charged its erection on a date certain after the former verdict and judgment and its maintenance to the date of beginning the second suit : *Held,*

1. That the narr in the second suit was in fault in that it did not set forth the previous verdict and judgment and charge a continuance of the nuisance, but that, as the defect might have been cured by an amendment, and, as under his plea of not guilty the defendant was not prevented from setting up the former judgment as an estoppel to a recovery of damages for the original erection and the plaintiff was allowed to recover only for the continuance, the defendant was not injured by the irregularity.

2. No man may trespass upon another's right, however insignificant that right may be; and, the former verdict and judgment conclusively establishing the fact that the original obstruction was a nuisance and a constant challenge to the plaintiff's right, he was entitled in the second action to such punitive damages as would compel the abatement of the nuisance.

3. When by the several grants to the parties, their properties are bounded by a private alley in controversy and the same use of the alley is made appurtenant to each property, neither party has the right to alter the character of the alley in any particular without the assent of the other.

4. In such case, it is not error to charge the jury that parties who are entitled to the free use of an alley, have the same right in it that the public has in its highways, and if the way were vacated the soil would belong to the plaintiff and defendant, each usque ad medium filum viae.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 437 January Term 1887, Sup. Ct.; court below, No. 73 December Term 1885, C. P. No. 4.

On December 4, 1885, The American Academy of Music brought an action in case against John Ellis. The narr set out the ownership by the plaintiff of two certain contiguous lots of ground with the messuage or building thereon erected, situated on the south side of Locust Street in the eighth ward of the city of Philadelphia, bounded and described:—One of them on the south side of Locust Street containing in front on Locust Street 18 feet, and extending in depth southward of that width, 170 feet to the north side of an alley or court ten feet wide, leading westward into another ten feet wide alley or court, which leads southward into Lardner street;—the other, contiguous to the foregoing, containing in front on said Locust street 20 feet and extending in depth southward of that width, 175 feet, " with the free use, right, liberty and privilege of the said ten feet wide alleys or courts, as passageways and water-courses, with or without horses, cattle, carts and carriages, at all times forever, in common with the owners,

Charge of Court below.

tenants and occupiers of other lots bounding thereon, etc." It was then charged in the first and second counts of the narr that the defendant, on November 3, 1884, and on divers other days and times between that day and the commencement of this suit, etc., "wrongfully and injuriously placed and erected and caused to be placed and erected divers doors, gates, shedding, large quantities of boards, planks, wood, piles of manure and other materials, in, upon, over and across said alleys, courts and ways," etc., etc., and thereby during all the said times the said alleys, courts and ways were and still are greatly obstructed, etc. In a third count, it was charged that the defendant, on said date, and at divers other days, etc., had placed or caused to be placed piles and heaps of manure and other materials near to and against the wall of said plaintiff, in so careless, negligent and improper a manner as to greatly weaken, injure and damage the said messuage and premises of the said plaintiff and render the same incommodious, unsafe and unfit for occupation, etc. The plea was, not guilty.

At the trial on February 10, 1887, among other facts sufficiently appearing in the charge of the court below, it was shown that the defendant was an owner of a lot or lots abutting upon the said east and west alley, opposite to the premises of the plaintiff, and on said lot was erected a stable occupied by the defendant, and that as such abutting owner the defendant was in enjoyment of the same rights and privileges in the use of the said alleys or courts as were enjoyed by the plaintiff. The properties of both plaintiff and defendant were bounded on the alley between them. It also appeared that a suit had been brought by the plaintiff against the defendant to No. 3 September Term 1884, for the erection of the nuisances in this same ten feet alley, which suit was tried on April 8, 1885, resulting in a verdict and judgment for the plaintiff for $10 damages and costs.

The court, ARNOLD, J., charged the jury and answered the defendant's points as follows:

The Academy of Music, the plaintiff in this case, has brought this action against John Ellis, which is known in law as an action for a nuisance, the obstruction of a private right of way. It had previously brought suit for the same cause of action in

another court, and recovered a verdict in its favor with an assessment of damages, as you have been told, of $10. This suit is an action for continuing the nuisance after the right of the plaintiff to have it abated had been established.

A nuisance is defined to be anything that works hurt, inconvenience or damage. Any invasion of a right, without regard to the extent of the damage, must be vindicated, if the right exists and it has been invaded.

The Academy of Music claims title to the free and unobstructed use, right, liberty and privilege of a certain ten feet alley which is on the south end of two lots of ground bought by the Academy about thirty years ago. That alley is ten feet wide, and runs east and west from the rear of the Academy lot, into another alley which runs south into Lardner street. You and I have been over both alleys, and have seen them, and have in our minds their location.

John Ellis, the defendant, also has the same free and unobstructed use, right, liberty and privilege of those same alleys. The free and unobstructed use of an alley means exactly what those words imply; free, because it is open to those who are entitled to it, and unobstructed, because they may use it without being impeded in any way. [By the rule of law, if that alley should be vacated at any time, the land, or the soil of it, would go in equal parts to the adjoining owners, unless it appeared that the soil was contributed more by one adjoining owner than the other; and, as that does not appear in this case, we may well assume that upon the vacation of the alley the soil of the alley belongs in equal parts to the private owners abutting thereon. That is to say, if the alley should be vacated, the Academy would get the five feet next to its brick wall, and Mr. Ellis would get the five feet next to his stable, and the school house lot have five feet next to it. Therefore, there is a right in the adjoining owners, subject to the joint use of those persons abutting thereon who have rights given to them either by their deeds, or who have acquired rights by long continued use thereof.] [1] Exception.

[Parties having the use of an alley which is free and unobstructed, are entitled to the same use of it that the public is entitled to on its highways. If it is wrong for a private owner, owning on both sides of the street, to shed over the street, it is

wrong for a private owner to shed over an alley if the other owners object. No matter if they are not injured to any considerable extent, still if their legal right is invaded, they are entitled to have that right vindicated by verdict and judgment in their favor establishing the right and its invasion.][2] Exception.

[Mr. Ellis put up that shed. He does not deny it. It is a legal obstruction, such as a Court of Equity, in view of the fact that there had been a previous verdict upon the same state of affairs, would by an injunction upon Mr. Ellis compel him to take down.][3] Exception.

As to the gate, it was put up first, it is said, by a circus company. If Mr. Ellis had nothing at all to do with the gate, either to put it up, or to maintain it, or to continue it after it was there, of course he would not be responsible for it. He is only responsible for such acts upon the alley as he himself does. But that gate became decayed, and Mr. Ellis's son, who attended to his business for him, had it renewed, and it is now closed by Mr. Ellis, his son, and his workmen every night. [If that gate had been there when the right of way was laid out, that is, when the alley was laid out, it would not be a wrong to continue it; but a party has no right to change the condition of the alley except with the consent of all the parties bounding thereon. Therefore, the gate, being put there after the right of the Academy, and after Mr. Ellis's right was conveyed by deed, was put there subject to objection by any person who did not consent to it.][4] Exception.

Other objections are made. The next is, that there was a plank between the alley and the school lot. Mr. Ellis said that it was put there to keep the school lot earth from sliding down into the alley. In other words, it is a sort of wooden retaining wall. I do not know that so much objection is made upon that point, and I think it is a matter for the jury to say whether a wooden retaining wall upon the side of an alley which would keep earth from an adjoining lot from sliding into the alley, is such an obstruction as would amount to a nuisance and would entitle parties to recover damages. [As to cleaning horses in the alley, the deed gives no such privilege. The owner of an alley has no right to turn it into a stable yard.][5] Exception.

Necessity sometimes justifies acts on the part of a property

owner which would otherwise be a nuisance. No man has a right to throw wood or stone into a street at pleasure. Inasmuch as fuel is necessary, a man may throw wood into the street for the purpose of having it carried into his own house, and it may lie there for a reasonable time. It would be the same as to taking in coal. So also, in the case of building houses. Stone, brick, sand and other material may be placed upon the street, as we see every day, provided it be done in the most convenient manner and be not unreasonably prolonged.

The primary object of a street, and so also of a private way, is for free passage. Anything which impedes free passage without necessity, is a nuisance. If the nature of a business is such as to require the unloading and loading of many more wagons than can be conveniently contained within a man's own private property, he must either enlarge his property or remove his business to some more convenient spot.

These are well established rules of law which I am quoting to you, and not my own words.

A cart or a wagon may be unloaded at a gateway. This must be done with promptness. So, as to repairing houses. A man submits to inconvenience occasioned necessarily in the repairing of a house, but if the inconvenience is prolonged for an unreasonable time, the public have a right to complain. These are rules as to the public highway, and they apply also to those private rights of way where a few persons are entitled to use them.

A man has no right to eke out the inconvenience of his own premises by taking the public highway into his stable yard. The same rule applies to a private way.

[Therefore, if you find from the evidence that Mr. Ellis makes use of that alley-way by turning it into a stable yard, that is a wrong for which he is liable here.] [6] Exception.

In regard to manure, I do not see anything in the evidence which shows that Mr. Ellis used the alley for dumping manure into it. Undoubtedly manure is created by getting out hay; but that is one of the incidents in the use of a way. It will become dirty, and dirt becomes manure. There does not seem to be, in this case, any proof that Mr. Ellis has been using that alley as a storage place for manure. Also, as to the privy-boxes that you have heard about, it appears that they were

removed after the last trial, probably about the time this second suit began.   Mr. Ellis has a right to drop his hay out of the window, put it in a barrow, and wheel it into the stable, just as he has the right to haul his wagon up alongside of the window on Lardner street to take his hay in.   These are the temporary uses which a man may make of a public or private way, for the purpose of conducting his business.   He has no right, however, to take it permanently and continue that use.   [Therefore, as to the shedding, I say to you that that is an obstruction for which the plaintiff is entitled to your verdict.] [7]   Exception.

[So also as to the gate.   If you find that that gate was put in after the plaintiff and Mr. Ellis derived their title to the alley, and the plaintiff objects to it, it has a right to object, and also a right to a verdict.   It is nothing that the inconvenience is small.   It may become large.] [8]   Exception.   I am quoted as saying to you that scenery could not be taken in there because these doors are too small.   That was apparent to you and to me when we saw the place ; but the Academy may, if it sees fit, enlarge the doors.   I simply said, not as a matter binding upon either party, but in answer to an objection that they could not get their scenery in, that even if they got it up through the alley, they could not get it into the building because the door now is too small ; but they may enlarge their door if they see fit.

[They might also complain, that in case of a fire the firemen would have to tear the shed down before they could put a stream of water up there.   There are some inferences which jurymen may draw upon their own knowledge.   For instance, it is quite well understood by persons who live in the city, that in case of a fire there, firemen would not want to get an engine up in that alley, but would take the hose up, and after they got the hose up, and wanted to play on the building, and found that there was a shed there, they could not do it until they had torn the shed down.   So also a fireman, going in there at night, would have to get over the gate to unbolt it.   The fireman might not know whether it was locked, or barred, or what was the case.] [9]   Exception.   Under some circumstances, that might be a very great inconvenience, and under other circumstances, very slight.

If the alley itself was a nuisance, the Board of Health might

Charge of Court below.

order it to be abated by being paved or cleaned, if it became filthy, and charge the expenses upon the adjoining owners.

[The complaint here is, not as to the alley on the street from the outside, but as to the gate that is inside; that the use the defendant makes of it together with the shed, may in time ripen into a right, by reason of which they would claim the entire ownership of the alley as part of the stable yard.] [10] Exception. [The plaintiff claims that its rights have been violated here, and for that it claims at your hands a verdict. A former action established that fact, and therefore there must be a verdict for the plaintiff in this case.] [11] Exception.

An action at law lies for any injury to land or property, however inconsiderable, which is occasioned by a nuisance. A man cannot with impunity invade the premises of another by a nuisance, because the damage may be inappreciable. The law allows at least the recovery of nominal damages as evidence of the plaintiff's rights. [In an action for continuing a nuisance, as this is, after a verdict for the plaintiff in a former action for the same injury, he is entitled to recover such damages as will punish the defendant and compel him to abate the nuisance, and this, although the erection is of great value to the defendant, and the injury to the plaintiff is inconsiderable.] [12] Exception. In the first case, the damages given were nominal, being damages in name only. Six cents, $1.00, $5.00, $10.00—any small sum, is considered nominal damages. It establishes the right, but as the injury is small, it goes no further. When you come to a second suit, then the jury has power to give damages, which are what we call punitive, and which makes it so expensive for the defendant that he will cease to continue the use which has been complained of.

[What the damages in this case shall be, I leave to you. I have laid down to you the rules of law as I have taken them from our books, leaving it altogether to you to apply those rules to the case, saying to you that inasmuch as the defendant does not deny that he put up the shed and keeps it there, and also the gate, that he creates such a nuisance that the plaintiff has a right to recover.] [13] Exception. As to the use of the alley for currying horses, whether that is done or not, I leave to you to say. As to the damages I leave that altogether to you.

Charge of Court below.

The defendant asks me to charge you as follows:

1. That if the gate was continued across the alley-way to protect it from tramps and other intruders, and for the safety of the property owners entitled to the use of the alley, it is for the jury to say whether it was any practical obstruction to the use of the alley by the plaintiff, and if the jury find it was not, the verdict must be for the defendant.

Answer: I have practically answered that heretofore, by saying that this would be so if the gate were there when the rights to the alley were granted, or if this were the first suit, to keep the damages down to a nominal sum; but the evidence shows that the gate was put there within twenty years, I think, and it has been maintained by the defendant, and has been the subject of a former suit in which it was condemned as an invasion of the plaintiff's right.[14] Exception.

2. That if the gate and shed have not interfered with the use of the alley by the plaintiff, there can be no recovery by the plaintiff in this case on their account.

Answer: I decline this point.[15] Exception.

3. If the jury find that the planking was put on the north side of the alley for the purpose of keeping the soil and water from the school lot from being washed over into the alley, there can be no recovery in this action by the plaintiff on this account, if the jury find that it was a reasonable precaution and not an obstruction to the use of the alley.

Answer: Affirmed.

4. That if the jury find, as the plaintiff's witness Higby has testified, that the plaintiff has not been interfered with, in its use of the alley, by the posts, planking, shed and gate, then the verdict must be for the defendant.

Answer: Refused.[16] Exception.

5. If the jury find from the evidence, that the matters complained of by the plaintiff, were not a practical hindrance and an unreasonable obstacle to the use of the alley by the plaintiff, then the conduct of the defendant as to these matters was not wrongful, and created no illegal obstruction, and this action will not lie against the defendant and the verdict must be for defendant.

Answer: Refused.[17] Exception.

I have heretofore said to you that a man has no right to eke

out the inconvenience of his own premises by taking the public highway into his timber yard, or stone yard, or stable yard. In saying that, I lay it down as a rule of law. I do not want you to imply that, because I say it, I have said that the defendant is using this yard as a stable yard to curry horses in. I leave that for you to find.

The verdict of the jury was in favor of the plaintiff for $400. A rule for a new trial was granted, argued and new trial refused, when, judgment being entered on the verdict, the defendant took this writ specifying as error:

1–13. The parts of the charge embraced in [ ] [1 to 13]

14–15. The refusal of defendant's 1st and 2d points. [14 15]

16–17. The refusal of defendant's 4th and 5th points. [16 17]

*Mr. Geo. Junkin*, for the plaintiff in error:

1. In instructing the jury that if this alley were vacated, the soil of the alley would belong to the plaintiff and defendant in equal parts, the court erred in applying to a private alley the same law that is applied to the public streets of a great municipal corporation, or the public highways of the commonwealth. The law is not so, as to private alleys; the parties have such rights only in the alleys as are given them by their title deeds. In the present instance, the words of the grant to the plaintiff and to the defendant are precisely the same, to wit: The free use, etc., of said alleys or courts "as and for passage-ways and water-courses with and without horses, cattle, carts and carriages, at all times, hereafter forever." This was the exact measure of the rights of the plaintiff and defendant to either of these alleys. The fee of the soil, subject to the rights of the plaintiff and of the defendant and others, (and who and how many did not appear), to use the surface, is still in the original owner of the same by whom these alleys were laid out, unless granted to some one of the other abutting grantees. No authority can be cited for the position that the plaintiff had the right to the alley usque ad cœlum. The use given is an ordinary passage way and water-course; whatsoever space above the surface is used and necessary for these, is given, and no more. The view here taken is abundantly sustained by authority: Wood on Nuisances, § 164; City v. Market, 99 Mass. 285; Stevenson v.

Stewart, 7 Phila. 293; Bakeman v. Talbot, 31 N. Y. 366; Huson v. Young, 4 Laws (N. Y. S. C.) 63; Van O'Linda v. Lathrop, 31 Pick. 292; Atkins v. Boardman, 2 Met. 457; Commonwealth v. Harris, 10 W. N. 14. ·The question is, not whether the defendant has done what he had no right to do as against the owner of the soil, but, has he in doing so, violated the rights of the plaintiff as granted to it?

2. The court assumed, and charged as matter of law, that the gate was per se a nuisance; and so as to the posts and roofing. This was a question for the jury. To constitute a nuisance, not only must a right be violated, but the violation of the right must work material inconvenience, annoyance, discomfort, injury and damage. All the cases and text-books speak of the necessity that the obstruction be a material one, not one that does no harm: Wood on Nuisances, §§ 1, 4, 9, 271; Walter v. Geefe, 4 E. L. & E. 20; Sparhawk v. U. P. Ry. Co., 54 Pa. 429, 432; Commonwealth v. Harris, 10 W. N. 14; Strickland v. Woolworth, 3 N. Y. (S. C.) 386; Williams v. Esling, 4 Pa. 488; Connery v. Brooke, 73 Pa. 84; Demuth v. Amweg, 90 Pa. 181. The gate as renewed by the defendant was not an unreasonable obstruction, nor was it an obstruction at all to the actual use of the alley by the plaintiff, as all the testimony on both sides abundantly showed. And if it were, that was a matter for the jury to decide. So, the shed or roof over the alley was not an obstruction of which the plaintiff had the right to complain. But the court treated the plaintiff as the owner of the soil, who, as in the case of a projection overhanging an owner's land, was entitled to have it come down, so as to leave the space clear to the sky.

3. The first two counts in the narr in this case are identical with those of the narr in the former case. The third count was virtually abandoned. The two counts of the narr in the first suit were for the erection, etc., of the obstructions on January 1, 1880 and their continuance to the bringing of that suit on October 30, 1884. So, the two counts in the present suit are for the erection, etc., of the obstructions on November 3, 1884, and their continuance to the bringing of this suit on December 4, 1885. The law is well settled that when a suit is brought for the continuance of a nuisance after a verdict and judgment have established that it was a nuisance, it must appear in the

declaration that it is brought for the continuance. The presumption is that the verdict and judgment are a full satisfaction for the damage done by the erection and maintenance of the obstruction up to the date of bringing of the first action; the second, must simply be for the damage resulting from the continuance of the nuisance or obstruction, and this, and this only, is what the narr must show: Wood on Nuisances, § 838; Staple v. Spring, 10 Mass. 72. The trial judge ought to have instructed the jury that on these two counts their verdict should be for the defendant. Moreover, the court told the jury that they must find against the defendant for such an amount as would compel him to take the gate and shed down. In Casebeer v. Mowry, 55 Pa. 419, the court say: "Where nominal damages only have been given in the first action, it establishes the right, and, in a second, real damages may be given, *if shown.* Not that a verdict should be given that would compel the defendant to pull down his dam; but for such damages as the plaintiff showed he had suffered." See also, Whetstone v. Bowser, 29 Pa. 59.

*Mr. George W. Biddle* (with him *Mr. A. Sydney Biddle*), for the defendant in error:

1. The damages as laid in both the first two counts of the narr were not for the erection, but for the continuance of the alleged nuisance: "Yet the said defendant . . . . . kept and continued the said door, shedding, etc., then or previously placed and erected in, upon, etc., . . . . . during all the time aforesaid," etc. No evidence was given concerning the erection, no damages were asked therefor, and the judge charged that the damages were to be for the continuance. And the instruction that "in an action for continuing a nuisance, as this is, after a verdict in a former action for the same injury, the plaintiff is entitled to recover such damages as will punish the defendant and compel him to abate the nuisance, and this although the erection is of great value to the defendant and the injury to the defendant is inconsiderable," embodied one of the simplest principles of the law, that the measure of damages in an action for a trespass or a nuisance is not the actual injury, but that punitive damages may usually be given, always, in a case of a nuisance: Casebeer v. Mowry, 55 Pa. 423; McCoy v. Danley, 20 Pa. 85; Whetstone v. Bowser, 29 Pa. 65.

2. The record in the former action established the very fact that the defendant had obstructed the alley and was a wrong-doer; the only facts that it did establish: Casebeer v. Mowry, 55 Pa. 519. That judgment was conclusive proof, as between the parties, of the facts in issue, and decided, and appearing from the record to be the ground of the judgment: Kilheffer v. Herr, 17 S. & R. 319; Stevens v. Hughes, 31 Pa. 381; Peterson v. Lothrop, 34 Pa. 223.

3. It is said that the maintenance of the gate and the shed did not interfere with the free use of the alley by the plaintiff. Several of the plaintiff's witnesses testified to the contrary, and the court was bound to charge that if Ellis maintained the gate, notwithstanding the plaintiff's objection and after the judgment in the first case, he was responsible in damages: Connery v. Brooke, 73 Pa. 80; Demuth v. Amweg, 9 Pa. 181; Wood on Nuisances, § 164; Cushing v. Adams, 18 Pick. 110; Rex v. Jones, 3 Camp. 230; Thorpe v. Brumfitt, L. R. 8 Ch. App. 655. In Stevenson v. Stewart, 7 Phila. 293, the defendant was allowed to build over the alley-way, but this was because he was the owner of the soil over which the plaintiff had a reasonable passage only, and that plaintiff was not the owner of the soil at all. But in this case, the plaintiff is the owner of the soil for a distance of 38 feet of the length of the alley. The presumption is that the soil of a road usque ad medium filum viae belongs to the owners of the adjoining lands, applies equally to a private as to a public road: Holmes v. Bellingham, 7 C. P., N. S. (97 E. C. L. R.), 329.

Opinion, Mr. Chief Justice Gordon:

This was an action on the case brought by The American Academy of Music against John Ellis, for the alleged obstruction of the plaintiff's right of way over and upon two certain private ways or alleys, adjacent to and appurtenant to the plaintiff's premises. The plaintiff's right to the free and unobstructed use of the said alleys was established by a previous verdict and judgment, rendered in a suit between the same parties, and found in the records of the Common Pleas No. 3 of the said county, at No. 3 September Term 1884, so that we need seek no farther for the plaintiff's right. The principal obstructions complained of in that case, were the

erection by the defendant of a shed over one of the alleys, and the closing of it by one or more gates. The present action is substantially for the continuance of the same nuisance, though the narr also charges the erection of the same. As this forms the ground of one of the exceptions, we may as well consider it before proceeding further.

The counsel for the plaintiff in error alleges correctly that the narr, in two of its counts, is for the erection of the obstructions on November 3, 1884, and their continuance from that date up to the bringing of the suit on December 4, 1885; whilst the narr in the first suit charges for the erection of the obstructions on January 1, 1880, and their continuance from that time up to the bringing of that suit on October 30, 1884. He hence urges that the narr in the present suit is in fault in this, that it should have set forth the previous verdict and judgment, and then charged a continuance of the nuisance. Certainly the rules of strict pleading require what is here stated; but what then? The defendant was not injured thereby. Had the objection been made during the trial, the defect might have been cured by an amendment, and, at all events, he was not prevented from setting up the former judgment by way of estoppel to a recovery of damages for the original erection. Moreover, had the defendant chosen to take advantage of the former recovery, he should have pleaded it in bar, but instead of this he chose to go to trial on the plea of not guilty, and so waived the defect. In this, the case is very similar to that of Smith v. Elliott, 9 Pa. 345, where, under the same defect in the declaration, a like objection was not only made but sustained in the court below. We, however, held the ruling to be erroneous, and Mr. Justice Rogers, in delivering the opinion of this court, said: "The defendant instead of pleading the former recovery in bar of the action, pleads the general issue. It is not denied that the defendant may give in evidence a former recovery in an action on the case for a nuisance, under the plea of not guilty, but it is not, as the court ruled, conclusive." A similar mistake was committed by the Court of Common Pleas in the case of Fell v. Bennett, 17 W. N. 117, and was corrected here. These cases rule the point in controversy, and sustain the court below. Nor was the defendant injured thereby, for of the previous verdict he had all the advantage to which,

under his plea, he was entitled, since the plaintiff was allowed to recover only for the continuance of the nuisance.

As most of the remaining assignments are altogether without merit, we will pass them, and notice but one or two of the others.

It is alleged that the obstructions did not materially injure the plaintiff, and therefore no damages were recoverable. But as they were a constant challenge to the plaintiff's right to have a free and unobstructed way over the alleys, and also in view of the fact that a recovery was had for the erection of the nuisance, this doctrine cannot be entertained. If there was no injury to the plaintiff there could be no nuisance, for the very definition of a nuisance is, "anything that unlawfully works hurt, inconvenience or damage;" but the former verdict conclusively established the fact that the original obstructions came within the definition here given, and if the erections when first made were nuisances, how can the conclusion be avoided that their continuance must be injurious? In McCoy v. Danley, 20 Pa. 85, we held that in an action for the continuance of a nuisance by means of a mill dam, the plaintiff was entitled to such punitive damages as would compel the defendant to abate the nuisance, and this though the erection was of great value to the defendant, and the damage to the plaintiff inconsiderable. This, however, is but the re-statement of a doctrine as old as the common law; no man may trespass upon another's right however insignificant that right may be. On both reason and authority, therefore, the assignment under consideration cannot be sustained. We may here also call attention to the fact, that this case disposes of the exception which impugns the instruction that the jury might give punitive damages.

Again: it is urged, that the learned judge erred in assuming that the gate closing the alley, and the roof covering it were per se nuisances. But how could he assume anything else in the face of the former verdict? A gate may or may not be an obstruction, depending upon circumstances, which were, in this case, properly defined and left to the jury. A grant of a way on which, at the time of the said grant, a gate is used, and the grantee suffers it to remain an indefinite length of time, must be construed, as was held in Connery v. Brooke, 73 Pa. 80, to have been taken subject to that incumbrance. But clearly this

rule cannot be applied to a case such as the present, where, at the time of the grant, there was no such obstruction, for otherwise the co-grantee would have the power to alter the conditions of the grant at any time he might see fit so to do. The same rule must apply to the covering of the alley. Not only did the former verdict determine the character of the erection, but, without it, the question would naturally arise, by what authority did Ellis undertake, without the assent of the Academy, to make use of the way in this manner? It is true, the owner of the fee may use the servient soil as he pleases so that he does not interfere with the right of his grantee, but Ellis was not the owner of the fee, and hence could not arrogate to himself the rights of such owner. The right, whether in the fee or only in the way, was common to both parties, so that neither, without the assent of the other, had the right to alter the character of the alley in any particular. Nor did the court err in charging that parties who are entitled to a free use of an alley, have the same right in it that the public has in its highways, and that if the way in this case were vacated, the soil would belong to the plaintiff and defendant as tenants in common. By the several grants to these parties, their properties were not only bounded on the alley in controversy, but it was made appurtenant to those properties. Nothing, therefore, was left in the owner, and if the fee did not vest in these grantees it is hard to tell where it is. The case is very much like that of Holmes v. Bellingham, reported in 7 C. B., N. S., 329, in which COCKBURN, C. J., says: " The direction complained of is, that the learned judge told the jury that there was a presumption in the case of a private way or occupation road between two properties, that the soil of the road belongs usque ad medium to the owners of the adjoining property on either side. That proposition, subject to the qualification which I shall presently mention and which I take it was necessarily involved in what afterwards fell from the learned judge, is in my opinion, a correct one. The same principle which applies to a public road, and which is the foundation of the doctrine, seems to me to apply with equal force to the case of a private road." As the doctrine here stated seems to be reasonable and sound, we cannot understand why we should not adopt it. It seems to be admitted that, were the alley public, its vacation would vest in

each of the parties the unincumbered one half of the fee in severalty, and why this should not apply to a private way, where, just as in the case of a public way, by the grant it was made appurtenant to the several properties, we cannot understand. Without dwelling further on the assignments of error, we are led to the conclusion that in no particular was there a mistrial in the court below.

The judgment is affirmed.