## Taylor, Appellant, *v.* Gross.

Argued April 12, 1961.   Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Ralph J. McAllister,* with him *Avra N. Pershing, Jr.,* and *McAllister & McAllister,* for appellant.

*A. C. Scales,* with him *Henry E. Shaw, Bernard Redlich,* and *Scales and Shaw,* for appellees.

OPINION BY ERVIN, J., June 15, 1961:

Clifford I. Taylor, the appellant, instituted an action in equity to enjoin Ben Gross, Celia Gross and Glenn Baughman, appellees, from blocking an alley. The court below, after hearing, dismissed the complaint and decreed that the plaintiff was not entitled to injunctive or other equitable relief.

The facts are as follows: Andrew Lewis McFarlane was the common source of title and he owned a 140-acre farm which had a frontage on the Lincoln Highway.

### EL DORADO LOT

In 1930 McFarlane sold a lot (hereinafter called El Dorado or El Dorado lot), having a frontage of 400 feet on the highway and extending in a northwardly direction 150 feet.   The deed conveying El Dorado did not mention the 15-foot wide alley and we may assume

that the alley was not in existence at the time of this conveyance. In 1948 El Dorado was conveyed to Angelo J. Flex et ux., the description in the deed being the same as that in the original deed from McFarlane and the 15-foot wide alley was not mentioned. By another deed recorded at the same time in 1948 Angelo J. Flex also acquired title to a piece of land directly in the rear of the El Dorado lot and this deed described the land as "Beginning at a point on the Northerly side of a fifteen (15) foot alley at the southeasterly corner of other property of parties of the second part known as El Dorado lot; . . . ." The description continued by courses and distances and ended as follows: "Thence South 41° 48′ East, a distance of one hundred one and fifty-eight hundredths (101.58) feet to said fifteen (15) foot alley; and thence along said alley South 49° 56′ West, a distance of 83.07 feet to the place of beginning."

The El Dorado lot was conveyed by Flex to Gross by deed dated June 18, 1953. The deed described the lot by courses and distances and contains the following: ". . . thence along line common to lands herein described and lands formerly of Clifford I. Taylor [appellant] South 37° 47′ East 213.41 feet to a point; thence still by same, South 39° 31′ East 101.58 feet to a point on the westerly side line of a 15 foot wide alley; thence along the westerly side line of said 15 foot alley South 52° 13′ West 233.07 feet to a point in the center line of said Lincoln Highway. . . ."

## FISHER LOT

In 1934 Andrew Lewis McFarlane conveyed the balance of his farm to John L. Ridinger, which included a frontage of 315′ on the Lincoln Highway and the balance of the farm which lay back of the lots fronting on the Lincoln Highway. On February 19, 1946 Ridinger conveyed to James Fisher et ux. a piece

of land fronting 300 feet on the Lincoln Highway. This deed described the land as "Beginning at a point in the center of the Lincoln Highway (U. S. Route No. 30) on the Easterly line of a fifteen (15) foot alley extended, which alley is next to the El Dorado property on the West; thence along said alley extended, North 52° 13′ East, two hundred thirty (230) feet to a point; thence along other property of John L. Ridinger. . . ." by courses and distances back to the place of beginning. This lot hereinafter will be referred to as Fisher or Fisher lot. This deed contained the first reference to the 15-foot wide alley. The title to this lot was conveyed to Ben and Celia Gross and their son, Ivan Gerald Gross, by a deed dated June 19, 1958, two days after the filing of the complaint in this action.

On June 29, 1946 John L. Ridinger conveyed to Clifford I. Taylor (appellant) the land lying to the rear of the El Dorado lot and the Fisher lot. This deed conveyed a tract of 14.8 acres and contained the following: ". . . thence North 53° 01′ West 150 feet to line of lot of James and Anna M. Fisher; thence along line of said lot, North 44° 42′ East, 80 feet to a point; thence North 46° 51′ West, along said Fisher lot, 279 feet to a point on the west side of a 15 foot alley; thence along the west side of said alley, South 52° 13′ West, 80 feet to the northeast corner of El Dorado lot; thence along line of El Dorado lot, North 37° 47′ West, 448 feet. . . ." The description continued by courses and distances to the place of beginning. This deed also contained the following: "The party of the first part also grants and conveys unto the party of the second part, his heirs and assigns, those two certain strips of ground situate in North Huntingdon Township, Westmoreland County, aforesaid, adjoining the above described and extending from the Lincoln Highway (new route) to the property herein described, subject to ease-

ments or rights-of-way previously granted by the said party of the first part to the owners of the property abutting the same; the first strip being a 20 foot driveway lying between Lots D and C referred to herein, and the second strip being a 15 foot alley lying between the Fisher lot and the El Dorado lot referred to herein."

In 1947 Taylor, appellant, laid out a plan of lots known as Larimer Hills Plan and included the 15-foot alley in question here on the plan. The lot was improved by removing the top soil and placing red dog on it and the alley was used to haul equipment and material from the Lincoln Highway to his land in the rear. The alley then became visible for the first time and was used for the first time. It was not visible and had never been used prior to the time when Fisher acquired title to the Fisher lot from Ridinger on February 19, 1946. The appellees Gross hired appellee Baughman to dump rock and clay on the alley so that it could be used as a parking lot in connection with a restaurant which the appellee was then operating. This was done shortly before the filing of the complaint in this action. This made a bank 50 feet high on the alley so that it could not be used by the appellant. It will be noticed that the deed from Ridinger to Fisher for the Fisher lot did not expressly grant a right of way over the 15-foot wide alley. It will also be noted that this deed did not expressly reserve the title or right of user in the 15-foot wide alley. It will also be noticed that the deed from Ridinger to Taylor on June 29, 1946, approximately four months after the deed for the Fisher lot, for the balance of the farm, did specifically convey title to the 15-foot wide alley.

It is not necessary for a decision in this case to determine where title lies to the 15-foot wide alley. This action is primarily concerned with the question of the right of user of that alley. The court below determined

that Gross, by virtue of the deed from Ridinger to Fisher dated February 19, 1946, acquired not only the right to use the alley but also the title to the whole 15-foot wide alley because that deed did not expressly reserve unto the grantor either the title or the right of user. In so doing the court below expressly stated that the case of *Walker v. Walker*, 153 Pa. Superior Ct. 20, 33 A. 2d 455, controlled the present case. We cannot agree with that conclusion.

It is true that Judge RHODES, now President Judge, stated, at pages 23, 24: "When, in the deed from Baer to Boyts, the lot thereby conveyed was described as bounded by the alley, grantee acquired not only the right to use the alley (Schmidt v. Forster, 99 Pa. Superior Ct. 545), but also the title to one-half thereof, in the absence of an expressed intention by the grantor to the contrary. Ellis v. American Academy of Music, 120 Pa. 608, 15 A. 494; Saccone v. West End Trust Company, 224 Pa. 554, 73 A. 971; Oliver v. Ormsby, 224 Pa. 564, 73 A. 973; Rhoads v. Walter, 61 Pa. Superior Ct. 43, 47." That statement of the law, however, must be read in relation to the facts of that case. In the *Walker* case the facts are set forth by quoting the pleadings in a footnote. By referring to paragraphs 3 and 6 of the bill in equity, we think it is clear that the alley in that case was open and used at the time of the deed of conveyance in which the alley was first mentioned. In the cases of *Saccone v. West End Trust Company, Oliver v. Ormsby* and *Rhoads v. Walter,* relied upon by Judge RHODES, it is clear that the alley was open at the time of the deed of conveyance which first mentioned the alley. We cannot clearly tell whether the alley was open in *Ellis v. American Academy of Music* at the time when the deed of conveyance first mentioned the alley. If the *Ellis* case stands for the principle that title is conveyed by describing the property as bounded upon a private, un-

opened way, we do not believe that it is good law to-day.

In *Obringer v. Minnotte Bros. Co.*, 352 Pa. 188, 192, 42 A. 2d 413, our Supreme Court said: "Plaintiff contends that since the Hays Coal Railroad was made the monumental boundary line in the deed to Ward Equipment Company and since such boundary line had width, the rule laid down in Rice v. Clear Springs Coal Co., 186 Pa. 49, 40 A. 149, should apply. That is, when in determining the true intention of the parties to the deed, one of the rules of construction in Pennsylvania is that when a monumental boundary line given in a deed has physical extent as a road, street or other monument having width, courts will so interpret the language of the description, in the absence of any apparent contrary intent, as to carry the fee of the land to the center line of such monument.

"We agree that such construction should be given when the roadway involved constituted a public thoroughfare or a highway. This, for the reason of public convenience or ingress and egress from the abutting property. However, the facts of this case warrant no such construction."

We have determined in cases both before and after the *Walker* case, that where descriptions in a deed refer to a driveway as a boundary, which is not a highway or dedicated to public use, the grantee does not take title in fee to the center of it but by implication acquires an easement or right of way over the lands: *Andreas v. Steigerwalt*, 29 Pa. Superior Ct. 1, 4; *Vinso v. Mingo*, 162 Pa. Superior Ct. 285, 288, 57 A. 2d 583; *Hoover v. Frickanisce*, 169 Pa. Superior Ct. 443, 446, 82 A. 2d 570.

It is settled law in this state that when a public street or highway is called for as a boundary in a deed, the grantee takes title in fee to the middle of the street if the grantor had title to it and did not expressly or

by clear implication reserve it: *Andreas v. Steigerwalt,* supra, at p. 4. This is not so, however, where the street called for as a boundary is not a public highway but rather a private, unopened alley or way.

Where an easement or other right is not expressed and is sought to be implied as attached to the grant of the fee, the same must clearly appear from the intention of the parties as shown by the terms of the grant, the surroundings of the property and the other res gestae of the transaction: *Fitzell v. Phila.,* 211 Pa. 1, 5, 60 A. 2d 323.

The fee in land may be in one person and the exclusive right to use it as a right of way may be in another but to accomplish that result the deed creating the right of way must specifically so covenant: *Ulrich v. Grimes,* 94 Pa. Superior Ct. 313, 316.

The grant from Ridinger to Fisher of the Fisher lot did not expressly grant a right of way and, of course, did not expressly grant an exclusive right of way. That deed did not expressly grant to the grantee any right to use the alley. It is, therefore, necessary to determine the rights of the parties from the circumstances surrounding the transaction at the time the deed was made. We think that the court below erred in failing to take these circumstances into consideration. Prior to the execution and delivery of the deed from Ridinger to Fisher, Ridinger owned a farm, most of which lay back of the lots fronting on the Lincoln Highway (which had been conveyed out of the farm before he acquired the farm, including the El Dorado lot). Ridinger only owned 315 feet of land fronting on the Lincoln Highway and he conveyed 300 feet thereof to Fisher. After the delivery of this deed he still owned the remainder of the farm lying back of the lots fronting on the Lincoln Highway, which included 83.07 feet on the west side of the 15-foot alley. Under these circumstances what was the effect of using the east line

of a 15-foot wide alley as the western line of the property conveyed to Fisher? We think it is clear that Ridinger intended to retain the alley so that he would have a means of ingress and egress to and from his property in the rear. While Fisher acquired a right of way in the alley, by implication, he did not acquire an exclusive right of way. Ridinger never owned the El Dorado lot and as it had a frontage of 400 feet on the Lincoln Highway and a depth of only 150 feet, it cannot be supposed that Ridinger intended to benefit the owner of that lot. The deed to Fisher conveyed a lot frontage of 300 feet on the Lincoln Highway and a depth of only 230 feet so he had no need for an alley as he had access to the highway from any point on his lot over his land. Ridinger, the grantor, was the only person who could benefit from the alley as he retained the balance of the farm in the rear.

Furthermore, if the parties at the time of the deed from Ridinger to Fisher had intended that Fisher was to get title to the 15-foot alley it would have been a relatively simple matter to have made the frontage on Lincoln Highway 315 feet instead of 300 feet. This was not done as it was evidently not the intention of the parties to do so.

On June 29, 1946 Ridinger conveyed the rear property to Taylor. This was approximately four months after his deed to the Fisher lot. The fact that Ridinger attempted to convey the title to the alley to Taylor, appellant, so soon after the conveyance to Fisher shows that he, Ridinger, did not intend to convey the fee and the exclusive right of user of the alley to Fisher. Furthermore, shortly after Taylor obtained title he improved the alley by cutting out the brush and removing the top soil and he used the alley to haul equipment to his tract in the rear. He also hauled building materials over the alley for some properties which he built in the rear. It must be recalled that Fisher was

then the owner of the Fisher lot and there is no evidence in this record to show that Fisher objected to this use of the alley by Taylor. The parties, through their conduct over a number of years, have construed the transaction as giving both parties the right to use the alley. By this conduct they placed their own interpretation on the meaning of the deed here involved. If the conduct of the parties subsequent to the deed indicates that the parties placed a particular interpretation upon it, that meaning is adopted: Restatement, Contracts, §235(e); *Eagan v. Nagle,* 378 Pa. 206, 212, 106 A. 2d 222.

We think that a consideration of all the surrounding circumstances which existed at the time of the deed from Ridinger to Fisher for the Fisher lot, which deed was dated February 19, 1946, would have made clear the parties' intention that both the Fisher lot and Ridinger's property on the opposite side of the alley and to the rear thereof were to have the right to use the alley. We repeat that for this case it is not necessary for us to determine where the title to the alley lies.

Decree reversed and the complaint is reinstated and the record is remanded to the court below for the entry of a final decree consistent with this opinion.