**FEDORKO PROPERTIES, INC., Appellee,**

v.

**C.F. ZURN & ASSOCIATES, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 8, 1998.

Filed Nov. 17, 1998.

Darrel Vandeveld, Erie, for appellant.

Kevin Colosimo, Erie, for appellee.

Before EAKIN, SCHILLER and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

Defendant, C.F. Zurn & Associates ("Zurn") appeals the February 3, 1998 order granting Fedorko Properties, Inc. ("Fedorko") a preliminary injunction for exclusive use of the right of way easement set forth in Erie County Contract Book 0494, pages 1494–1500. We reverse the decision of the lower court and deny Fedorko's petition for a preliminary injunction enforcing Fedorko's right to the exclusive use of said easement.

According to the stipulations of the party before Judge George Levin of the Court of Common Pleas, Erie County, both parties to this action own property located near the corner of West 12th Street and Peninsula Drive, Erie, Pennsylvania.[1]  Zurn owns Par-

1. For the sake of clarity, this Court adopts and  incorporates the survey map contained in the

cel A, while Fedorko owns the adjoining Parcels B, C, and D. This case concerns alleged easements located on Zurn's Parcel A which serve as a right of way onto Fedorko's Parcel B.

Central to this case is the easement agreement between the parties, drafted by Fedorko and signed by both Fedorko and Zurn on October 11, 1996.[2] The key terms of the "Agreement Creating New Easement and Extinguishing Existing Easement" are as follows:

1. Grantor, for itself, its successors and assigns, hereby grants, bargains, sells, releases and conveys unto Grantee, its successors and assigns, a perpetual, exclusive easement over and across Parcel A for the purpose of ingress and egress to and from Parcel B or any land of Grantee that adjoins Parcel A or Parcel B, and for the placement of any utility services and/or signage incident to Grantee's development of its adjoining lands, said easement to be twenty-five feet in width . . .

\* \* \* \* \* \*

3. Grantee . . . shall be solely responsible for the cost of improving and maintaining the area of the New Easement for the purposes stated herein, however, until such time as Grantee improves the area of the New Easement and uses the same for the purposes stated herein, Grantor shall maintain the area of the New Easement at Grantor's sole cost and expense in the condition as it exists as of the date of this Agreement.

4. Grantor shall not in any way alter the condition of the surface area of the New Easement as it exists as of the date of this Agreement, such as would increase Grantee's cost to improve and use the New Easement for the purposes stated herein.

R. at 27a–28a.

While the procedural history of this case is complex, primarily because of Fedorko's numerous (and occasionally contradictory) alleged grounds for the preliminary injunction, we need only address Judge Levin's order of February 3, 1998, in this appeal. Judge Levin's order grants Fedorko "exclusive use of the right of way easement as set forth in Erie County Contract Book 0494, pages 1494 – 1500. This easement can only be used by the Plaintiff and its successors or assigns."

Appellant presents numerous questions for our consideration, all of which address alleged errors in the lower court's decision concerning the creation of an exclusive easement and proof of irreparable harm in petitions for preliminary injunctions involving property rights. Appellant's brief at 3. More specifically, Judge Levin posited that the use of the term "exclusive," as a matter of law, creates an easement granting Fedorko sole right to utilize the easement property, even to the exclusion of the servient estate. Trial Court Opinion, 2/3/98, at 2. Further, the lower court opined that when seeking a prohibitive preliminary injunction to enforce property rights, the petitioner need not plead and prove that the injury redressed by the proposed injunction is irreparable. Trial Court Opinion, 2/3/98, at 2.

■ When reviewing the propriety of a preliminary injunction, we must remember that the granting of a preliminary injunction is an extraordinary remedy. *Schaeffer v. Frey*, 403 Pa.Super. 560, 589 A.2d 752 (Pa.Super.1991); *Soja v. Factoryville Sportmen's Club*, 361 Pa.Super. 473, 522 A.2d 1129 (1987). However, "on appeal from the grant . . . of a preliminary injunction, we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below." *Coatsville Development Co. v. United Food & Commercial Workers, AFL–CIO*, 374 Pa.Super. 330, 542 A.2d 1380, 1384 (1988) (*quoting*

record and relied on by the lower court in its opinion, as well as both parties on appeal. In this survey map, the land owned by Zurn and Fedorko is divided into four parcels designated Parcel "A," Parcel "B," Parcel "C," and Parcel "D," respectively.

**2.** While both parties to the action and the stipulations on the record address the complete deed history of Parcels A and B, we do not feel the need to discuss the history prior to the time of the New Easement Agreement as it is not directly relevant to the preliminary injunction granted or the issues on appeal.

*Willman v. Children's Hospital of Pittsburgh*, 505 Pa. 263, 479 A.2d 452, 454–55 (1984)). Only where the preliminary injunction completely lacks support in the record or where the rule of law was clearly misapplied will we interfere with the lower court's decision. *See id.*

■ In order to sustain a preliminary injunction, the plaintiff must first show that:

1) plaintiff's right to relief is clear;

2) the need for relief is immediate; and

3) the injury which would result absent the injunction is irreparable.

*See Township of South Fayette v. Commonwealth*, 477 Pa. 574, 385 A.2d 344 (Pa.1978); *Zebra v. Pittsburgh School District*, 449 Pa. 432, 296 A.2d 748 (1972); *League of Women Voters of Pennsylvania v. Commonwealth*, 683 A.2d 685 (Pa.Cmwlth.1996). We now review the decision of the lower court to see if reasonable grounds exist in the record to support granting the preliminary injunction in light of the elements listed above.

First, we must review the court's decision concerning the requirement that plaintiff's right to relief be clear. Judge Levin decided as a matter of law that the use of the term "exclusive easement" in and of itself granted Fedorko an easement exclusive of all other parties, including the owner of the servient estate. The record provided for our review consists solely of factual stipulations made on the record and legal arguments. Judge Levin provided Fedorko an opportunity to call witnesses and offer evidence, but they declined. Consequently, Zurn, citing Fedorko's burden of proof, decided not to call witnesses either. After reviewing the law, Judge Levin decided that under Pennsylvania law the term "exclusive easement" is sufficient to create an easement that excludes the owner of the servient estate from use of his property. After reviewing the same case law, we cannot agree.

■ When reviewing an express easement, the language of the agreement, unless ambiguous, controls. *Columbia Gas Transmission Corp. v. Savage*, 863 F.Supp. 198 (M.D.Pa.1994) (reviewing the terms of an easement under Pennsylvania law); *Merrill v. Manufacturers Light & Heat Co.*, 409 Pa. 68, 185 A.2d 573 (1962). Under Pennsylvania law "[t]he fee in land may be in one person and the exclusive right to use it as a right of way may be in another, but to accomplish that result the deed creating the right of way must specifically so covenant." *Ulrich v. Grimes*, 94 Pa.Super. 313 (1928); *see also Taylor v. Gross*, 195 Pa.Super. 225, 171 A.2d 613 (1961). The central issue in this case is whether the use of the term "exclusive easement" in this New Easement Agreement clearly and unambiguously grants Fedorko the right to exclude Zurn from the use of its own property.

Both the trial court and appellee rely on *Ulrich v. Grimes*, as well as the cases citing to it, for the proposition that the use of the term "exclusive easement" alone is sufficient to create an easement that bars the owner of the servient estate from all use of the land. We agree that under Pennsylvania law it is possible to create an express exclusive easement that serves to bar even the servient estate from use of the land. *Ulrich*, 94 Pa.Super. 313. Further, such easement is created only when the parties "specifically so covenant." *Id.* at 316. Neither *Ulrich* nor any of the cases citing *Ulrich* [3] expand on the requirement to "specifically so covenant," and we cannot support a reading of the *Ulrich* language alone to support the proposition that use of the term "exclusive," regardless of the clarity or ambiguity of the term within the easement agreement, is enough to "specifically so covenant."

As Pennsylvania law does not establish that the use of the term "exclusive easement" is sufficient as a matter of law to grant an easement which excludes the servient estate,

---

**3.** We should note that the trial court stated for the record that it was persuaded to grant the preliminary injunction based, in part, on the continued following of the 1927 *Ulrich* decision in more recent years. A reading of the citations provided by the appellee to the trial court and listed on the record did not support this contention. While several cases decided from the trial court up through the Pennsylvania Supreme Court cite *Ulrich*, many of these cases do little more than cite the case in a string citation addressing unrelated issues. Thus, upon reading these cases, we are not convinced of the stalwart status of the *Ulrich* decision at this time. Absent additional case law on the issue, we simply choose to decide this case in consideration of *Ulrich*, but not in reliance on *Ulrich*.

we turn to review the plain meaning of the term independent of the *Ulrich* decision. The trial court's opinion and appellee's brief rely on an interpretation of the plain meaning of the term "exclusive easement" based on dictionary definitions of the word "exclusive." *See* Trial Court Opinion, 2/3/98, at 2; appellee's brief at 12. Reliance on the dictionary definition of a single word in the New Easement Agreement is not wise as it ignores the context of the word within the larger agreement. The law in Pennsylvania holds that the language of the express easement controls when the language of the *easement* is clear, not when one word or sentence, taken out of context, seems clear. *See Merrill,* 409 Pa. 68, 185 A.2d 573. The dictionary meaning of the word "exclusive" is irrelevant if it differs from the meaning given to the word in the context of the agreement as a whole. Thus, we review the use and meaning of the term "exclusive easement" within the context of the New Easement Agreement.

While Webster's Dictionary may clearly define the word "exclusive" to mean "having the tendency, or power to exclude all others ...," the meaning of the term "exclusive easement" in the context of the entire agreement is not as clear. Fedorko argues that the New Easement Agreement grants it sole use of the easement property, even to the exclusion of the grantor/landowner. At the same time, the very next page of the agreement specifically requires that "until such time as Grantee improves the area of the New Easement and uses the same for the purposes stated herein, Grantor shall maintain the area of the New Easement at Grantor's sole cost and expense in the condition as it exists as of the date of this Agreement." R. at 28a. Thus, Fedorko argues that paragraph 1 of the agreement bars Zurn, the grantor of the easement, from using the easement land in any fashion, but paragraph 3 requires that Zurn go onto the easement property and maintain it at his sole cost and expense. At the very least, the paragraphs demonstrate that the term "exclusive easement" is not clear and unambiguous on its face.

Since we cannot hold that the term "exclusive easement" is sufficient as a matter of law to grant an easement exclusive of the servient estate, we must review the record to establish that reasonable grounds exist to support the trial court's decision to grant the preliminary injunction. The record, however, contains nothing outside of the factual stipulations and legal arguments. Thus, there is no evidence as to the intent of the parties or the meaning of the term "exclusive easement" in the context of the entire agreement and in light of the contradictory language. Therefore, we hold that the lower court erred when determining that, as a matter of law, "[the easement] was meant to exclude the servient tenement Zurn, from use, as evidenced by its language." Trial Court Opinion, 2/3/98, at 2.

■ Based on the lack of substantive evidence presented by plaintiff on the record and the lower court's erroneous application of the case law, we find that the plaintiff failed to establish that plaintiff's right to relief is clear. In light of appellee's failure to establish that his right to relief is clear, there is no need for this court to consider the issue of irreparable harm. As one of the basic requirements for a preliminary injunction has not been established, we reverse the decision of the lower court and dissolve the preliminary injunction.

Order reversed. Preliminary injunction dissolved. Jurisdiction relinquished.