**TOM CLARK CHEVROLET, INC., Appellant,**

v.

**Pennsylvania DEPARTMENT OF ENVIRONMENTAL PROTECTION, Pennsylvania Department of Environmental Resources, Pennsylvania Department of Transportation, Pennsylvania Fish and Boat Commission, White Oak Borough Authority of the Commonwealth of Pennsylvania, City of McKeesport, Borough of White Oak, Municipal Authority of Westmoreland County and Roma Lawn Service and Nursery, Inc.,**

v.

**Municipal Authority of McKeesport, North Huntingdon Township and North Versailles Township.**

Commonwealth Court of Pennsylvania.

Argued Oct. 8, 2002.

Decided Feb. 14, 2003.

Charles A. Frankovic, Pittsburgh, for appellant.

James G. Knorr, Harrisburg, for appellee.

BEFORE: PELLEGRINI, Judge, FRIEDMAN, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Tom Clark Chevrolet, Inc. (Clark Chevrolet) appeals from the order of the Court of Common Pleas of Allegheny County (trial court) granting the Pennsylvania Department of Transportation's (DOT) motion for summary judgment and dismissing Clark Chevrolet's complaint. We affirm.

In 1967, DOT widened State Route 48 (SR48)[1], in McKeesport, Allegheny County, from a two-lane to a four-lane road. As a result of the expansion, DOT modified the course of Long Run Creek[2] so that it runs on the south or east side of the

---

1. The relevant portion of SR48 was formerly designated as Section 10 of Legislative Route 288 (LR 288–10). *See* Section 6 of the Sproul Act, Act of May 3, 1911, P.L. 468, *as amended,* 36 P.S. §§ 1092, 1261.

2. Long Run Creek begins in North Huntingdon Township, Westmoreland County, and flows west through the Boroughs of White Oak and Versailles and the City of McKeesport in Allegheny County before its confluence with the Youghigheny River. Reproduced Record (RR) at 163a.

roadway, and parallel to DOT's right-of-way with respect to SR48.[3] During the 1960's, prior to the expansion of the roadway, DOT removed sediment from Long Run Creek due to flooding in the area. The sediment removal ended in 1970.

In 1976, Roma Lawn Service and Nursery built a structure for its business along SR48 and Long Run Creek. This construction included the dumping of fill and other debris into the creek. In 1988, Roma expanded its facilities, which included the further dumping of fill and debris into the creek. The cumulative effect of this construction was to raise the land on the eastern side of SR48, to narrow the channel of Long Run Creek, and to restrict its capacity.

Since 1978, farther upstream, the Borough of White Oak had relocated Long Run Creek Run and removed several culverts. These modifications made Long Run Creek hydraulically more efficient upstream, increased its downstream channel grade, and restricted its downstream channel width.

In 1991, Clark Chevrolet built its facilities on the west side of SR48. On June 19 and 24, 1996, Long Run Creek overflowed, and the waters crossed SR48 and flooded Clark Chevrolet's parking lot.[4] The flooding damaged the pavement and Clark Chevrolet's inventory of new and used cars.

In June of 1998, Clark Chevrolet initiated a lawsuit sounding in trespass, negligence and nuisance in which it sought compensation for the damages it suffered as a result of the flooding.[5] With respect to DOT, Clark Chevrolet alleged, *inter alia*, that DOT was negligent in failing to properly alter and maintain Long Run Creek by failing to dredge the accumulated sediment.

 On February 26, 2001, DOT filed a motion for summary judgment in which it alleged, *inter alia*, that it was immune from liability, and that the real estate exception to this immunity contained in Section 8522(b)(4) of the Judicial Code does not apply.[6] On April 26, 2001, the trial court issued an order granting DOT's mo-

---

3. DOT's legal right of way of LR 288–10 from Allegheny County station 595+00 through station 609+69.77 and station 606+55.41 through station 610+00 is 70 feet wide, 35 feet from the centerline of the roadway. RR at 252a. In its expansion of the roadway, DOT constructed a concrete retaining wall from stations 608+60 to 608+80. *Id.* The face of the retaining wall is 34 feet from the centerline of the roadway, and its footing foundation extends between 3 and 6 inches beyond the right of way into Long Run Creek. *Id.* At stations 608+60, 608+80 and 609+30, DOT's right of way includes between 1 and 1.25 feet of Long Run Creek. *Id.* at 253a.

4. The June 19th rainfall was a 20–year flood event, and Long Run Creek overtopped its bank at station 608+50. RR at 163a. The June 24th rainfall was a 10–year flood event, and Long Run Creek overflowed its bank at the same location. *Id.*

5. The suit originally named the Pennsylvania Department of Environmental Protection, the Pennsylvania Department of Environmental Resources, the Pennsylvania Fish and Boat Commission, White Oak Borough, the White Oak Borough Authority, the City of McKeesport, the Municipal Authority of Westmoreland County, Roma Lawn Service and Nursery, North Huntingdon Township, North Versailles Township and DOT as defendants. However, following discovery, Clark Chevrolet stipulated to, or did not oppose, the summary judgment motions of a number of the defendants. Ultimately, only White Oak Borough, the City of McKeesport and DOT remained as defendants.

6. Section 8522(a) of the Judicial Code, 42 Pa.C.S. § 8522(a) provides, in pertinent part:

 (a) **Liability imposed.**—The General Assembly, pursuant to section 11 of Article I of the Constitution of Pennsylvania, does

tion for summary judgment.[7] On May 1, 2001, the trial court's order was entered on the docket.[8] Clark Chevrolet then filed the instant appeal.[9,10]

In this appeal, Clark Chevrolet claims that the trial court erred in granting DOT's motion for summary judgment, as it had articulated a cause of action which

hereby waive, in the instances set forth in subsection (b) only and only to the extent set forth in this subchapter ... sovereign immunity as a bar to an action against Commonwealth parties for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.

42 Pa.C.S. § 8522(a).

Section 8522(b)(4) of the Judicial Code provides, in pertinent part:

(b) Acts which may impose liability.— The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

\* \* \*

(4) Commonwealth real estate, highways and sidewalks.—A dangerous condition of Commonwealth agency real estate ... including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons ...

42 Pa.C.S. § 8522(b)(4).

7. White Oak Borough and the City of McKeesport had also filed a motion for summary judgment. The trial court's order of April 26th also granted these motions for summary judgment.

8. The order granting DOT's motion for summary judgment was issued by the Honorable Patrick McFalls. However, Judge McFalls has subsequently resigned from the Judiciary. As a result, no opinion in support of the trial court's order was filed as required by Pa. R.A.P.1925(a). In the absence of such an opinion, this Court would normally remand the matter to the trial court with the direction that an opinion be prepared and filed. See, e.g., Michaels Development Company, Inc. v. Benzinger Township Board of Supervisors, 46 Pa.Cmwlth. 337, 407 A.2d 895 (1979). How-

ever, as Judge McFalls is not available to prepare and file an opinion on remand, this Court may decide the case without the benefit of a trial court opinion. See, e.g., Perkins v. Desipio, 736 A.2d 608 (Pa.Super.1999).

9. The instant appeal only relates to the trial court's grant of DOT's motion for summary judgment; Clark Chevrolet does not question the propriety of the trial court's grant of the motions for summary judgment filed by White Oak Borough and the City of McKeesport.

10. As the Pennsylvania Supreme Court has noted:

[I]n evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. "Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof ... establishes the entitlement of the moving party to judgment as a matter of law." Young v. PennDOT, 560 Pa. 373, 744 A.2d 1276, 1277 (2000). Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Pennsylvania State University v. County of Centre, 532 Pa. 142, 615 A.2d 303, 304 (1992).

Murphy v. Duquesne University of the Holy Ghost, 565 Pa. 571, 590, 777 A.2d 418, 429 (2001). This Court's scope of review of the grant of a motion for summary judgment is limited to determining whether the trial court abused its discretion or committed an error of law. Kahres v. Henry, 801 A.2d 650 (Pa. Cmwlth.2002).

falls within the real estate exception to sovereign immunity contained in Section 8522(b)(4) of the Judicial Code. Specifically, Clark Chevrolet contends that, in this case, it has demonstrated[11]: (1) DOT had an ownership interest in Long Run Creek[12]; (2) DOT had a duty of care with respect to the maintenance of the streamway of Long Run Creek; and (3) DOT breached its duty of care with respect to the maintenance of the streamway of Long Run Creek.[13]

11. Clark Chevrolet relies upon the following documents submitted to the trial court: the expert report of Murray Associates, Inc., a professional engineering firm; the affidavit of James P. Hannan, a professional engineer associated with Murray Associates; the deposition testimony of Robert Fawcett, an excavation contractor formerly employed by DOT; and the affidavit and deposition testimony of Stanley Popovich, a DOT Maintenance Operation Engineer.

12. With respect to DOT's ownership interest in Long Run Creek, Clark Chevrolet relies upon the affidavit of James Hannan which states, in pertinent part:

> The face of the concrete retaining wall from station 608 + 60 to 608 + 80 is 34 feet from the centerline of the roadway. The stream (Long Run) flows at the face of the retaining wall. Therefore Long Run exists within the legal right of way. Based on the design drawings the spread footing foundation of the retaining wall is between 3 inches to 6 inches beyond the legal right of way.

> * * *

> [I] measured the distance from the face of the curb to the face of the wall at the following stations: 608 + 60, 608 + 80, and 609 + 30. The distances were 8.0 feet, 7.75 feet, and 7.75 feet. Based on these measurements, the right of way includes between one and 1.25 feet of Long Run ...

RR at 252a, 253a.

Clark Chevrolet also relies upon the deposition testimony of Stanley Popovich in which he stated that "[t]he stream runs parallel to Long Run Road, and there is a defined right-of-way for Long Run Road, and at some points the creek may encroach on that right-of-way", and that "[a]ctually it does not run through, it runs side-by-side with it, and at some points it may go into our right-of-way ..." RR at 241a. Finally, Clark Chevrolet also relies upon the deposition testimony of Robert Fawcett, in which he described the sites at which he had removed accumulated sediment from Long Run Creek while employed by DOT. *See* RR at 221a–222a.

13. With respect to DOT's liability, the Murray Associates report states the following, in pertinent part:

> **PENNSYLVANIA DEPARTMENT OF TRANSPORTATION**
> Mr. Robert Fawcett's [sic] testified under direct and cross-examination that he worked for [DOT] as an excavation contractor from about 1960 to 1970. He stated that he removed material from Long Run, as a contractor for [DOT], in 3 locations along the stretch from Lincoln Way to Walnut Street. Mr. Fawcett said that he would once a year: "go down into the creek bank and remove the material and put it into dump trucks and they would haul it away." He testified that he removed 20 to 25 loads (about 10 tons per load) from each location. He recalled on one occasion flooding going through the windows of the state shed and he stated the stream flooded "any time you had a large flood". There has been no evidence presented that indicates that there has been any on-going maintenance program to remove accumulated silt and debris from the stream channel since Mr. Fawcett's activities were conducted more than 30 years ago.

> * * *

> The flooding and resulting damages were caused due to the placement of fill material along the stream banks and deposition of sediment within the stream channel of Long Run and this occurred after the highway was constructed in 1967. The fill placement restricted the capacity of the stream and was an encroachment on the stream.

> * * *

> The City of McKeesport failed in their duty to safeguard the public by failing to require the land developer to obtain the required permits and allowed Mr. Roma and others to place fill and construct buildings on the property along Long Run. These activities

■ The Commonwealth and its agencies are immune from suit except where the General Assembly has specifically waived immunity. Title 1 Pa.C.S. § 2310; Section 8521 of the Judicial Code, 42 Pa.C.S. § 8521; *Crockett v. Edinboro University,* 811 A.2d 1094 (Pa.Cmwlth. 2002). As noted above, a Commonwealth party is not liable unless: (1) the alleged act of the Commonwealth party is a negligent act for which damages would be recoverable under the common law or by statute, Section 8522(a) of the Judicial Code, 42 Pa.C.S. § 8522(a); and (2) the act of the Commonwealth party falls within one of the exceptions listed in Section 8522(b) of the Judicial Code, 42 Pa.C.S. § 8522(b). *Id.* The exceptions listed in Section 8522(b) must be strictly construed and narrowly interpreted. *Id.*

■ Even if it is assumed that the streamway of Long Run Creek is Commonwealth real property, within the purview of Section 8522(b)(4) of the Judicial Code [14], Clark Chevrolet has failed to demonstrate DOT's liability with respect to the flooding of Long Run Creek. With re-

directly contributed to the damages suffered by [Clark Chevrolet]. These actions both increased the probability of flooding and the severity of flooding. This flooding resulted in significant damage to [Clark Chevrolet].

[DOT] knew based on Mr. Fawcett's deposition, and the proximity of Long Run to their Christy Park maintenance shed, that maintenance dredging was required to reduce the risk of flooding along this portion of Long Run. These actions both increased the probability of flooding and the severity of flooding. This flooding resulted in significant damage to [Clark Chevrolet].

The Borough of White Oak, by approving changes to Jack's Run and Long Run that improved the stream flow characteristics in effect reduced the storage of flood flows upstream of the Clark property. These actions both increased the probability of flooding and the severity of flooding. This flooding resulted in significant damage to [Clark Chevrolet].

The actions and in some cases the lack of action by [DOT], Borough of White Oak, and the City of McKeesport contributed directly to flooding and loss experienced by [Clark Chevrolet] on June 19, 1994 and June 24, 2994.

RR at 203a–204a. Likewise, the affidavit of James Hannan states, in pertinent part, that "[t]he lack of maintenance of the stream channel that was altered in the construction of LR 288 reduced the capacity of the stream channel and reduced its ability to manage the storm event that directly led to the damages received by [Clark Chevrolet]." *Id.* at 253a

14. With respect to DOT's ownership, Clark Chevrolet submits that the deposition testimony and expert reports demonstrate that Long Run Creek currently encroached or touched upon DOT's right-of-way for SR48 and, as a result, DOT had an ownership interest in Long Run Creek. As noted above, Section 8522(b)(4) of the Judicial Code provides, in pertinent part, that sovereign immunity has been waived with respect to "[a] dangerous condition of Commonwealth agency real estate ... including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons ..." 42 Pa. C.S. § 8522(b)(4). This Court has interpreted this section as requiring the Commonwealth agency to have title, ownership, physical possession or actual control over the real property in question. *CSX Transportation, Inc. v. Franty Construction,* 157 Pa.Cmwlth. 620, 630 A.2d 932 (1993).

As indicated above, at best, Clark Chevrolet has demonstrated that Long Run Creek runs along DOT's right-of-way and encroaches upon the right-of-way by up to 1–1/4 feet at various points. Thus, it is arguable that liability should not attach as the "dangerous condition" does not relate to Commonwealth property within the meaning of Section 8522(b)(4) of the Judicial Code. *See, e.g., Snyder v. Harmon,* 522 Pa. 424, 435, 562 A.2d 307, 312 (1989) ("[T]he appellees next assert that the close proximity between L.R. 33060 and the deep chasm, and the unlit and deceptive appearance of the shoulder of the road presented an inherently dangerous condition. Thus, liability is not predicated on a defective condition on Commonwealth land, but rather the knowledge of an inherently dangerous re-

spect to the drainage of surface waters [15], this Commonwealth adheres to the common law or "common enemy" rule that regards surface waters as a common enemy which every landowner must fight to get rid of as best he may. *Chamberlin v. Ciaffoni,* 373 Pa. 430, 96 A.2d 140 (1953); *Strauss v. City of Allentown,* 215 Pa. 96, 63 A. 1073 (1906); *Snap–Tite, Inc. v. Millcreek Township,* 811 A.2d 1101 (Pa. Cmwlth.2002); *Fazio v. Fegley Oil Company, Inc.,* 714 A.2d 510 (Pa.Cmwlth.1998), *petition for allowance of appeal denied,* 557 Pa. 656, 734 A.2d 863 (1999); *LaForm v. Bethlehem Township,* 346 Pa.Super. 512, 499 A.2d 1373, 1378 (1985). As this Court has recently noted:

> The law of surface waters basically states, "Water must flow as it is wont to flow." [*LaForm* at 1377]. Thus, "it is clear that only where water is diverted from its natural channel or where it is unreasonably or unnecessarily changed in quantity or quality has the lower owner received a legal injury." *Lucas v. Ford,* 363 Pa. 153, 156, 69 A.2d 114, 116 (1949). There is "no liability on the part of a municipal corporation for the flooding of private property from the inadequacy of gutters, drains, culverts, or sewers" as long as the municipality has not diverted water from its natural flow. *Torrey v. City of Scranton,* 133 Pa. 173, 19 A. 351 (1890).

*Snap–Tite, Inc.,* 811 A.2d at 1106. *See also White v. Pennsylvania Railroad Co.,* 354 Pa. 397, 399, 47 A.2d 200, 202 (1946) (" 'If a new course is made, different from

condition contiguous with Commonwealth property which the Commonwealth knows or should reasonably know and takes no action to prevent any harm from occurring. While this theory appears attractive, it is not supported by any exception to our immunity statute."). *But cf. Trenco v. Department of Transportation,* 126 Pa.Cmwlth. 501, 560 A.2d 285 (1989), *petition for allowance of appeal denied,* 525 Pa. 591, 575 A.2d 120 (1990) (A plaintiff's allegations that a landslide damaged his trucks, that DOT owned or had a right-of-way on land on which the landslide occurred, and that DOT negligently maintained the hillside, stated a claim within Section 8522(b)(4) of the Judicial Code.). Nonetheless, in reviewing the propriety of the trial court's order in this appeal, it will be assumed that the instant real estate is Commonwealth property within the meaning of Section 8522(b)(4) of the Judicial Code.

15. As previously noted, "[t]he term 'surface water' means water from rain, melting snow, springs, or seepage, or detached from subsiding floods, that lies or flows on the surface of the earth but does not form a part of a watercourse or lake. RESTATEMENT (SECOND) OF TORTS § 846 (1977)." *Alburger v. Philadelphia Electric Co.,* 112 Pa.Cmwlth. 441, 535 A.2d 729, 737 n. 1 (1988) (Dissenting Opinion by Doyle, J.). In turn, "[t]he term 'watercourse' means a stream of water of natural

origin, flowing constantly or recurrently on the surface of the earth in a reasonably definite natural channel. RESTATEMENT (SECOND) OF TORTS § 841(1) (1977)." *Id.* at 737 n. 4. Finally, it has also been noted:

> By "natural" watercourses are meant those watercourses whose origin is the result of the forces of nature. (But see Comment g [relating to new channels] ). By artificial waterways are meant all waterways that owe their origin to acts of man, such as canals, drainage and irrigation ditches, aqueducts, flumes and the like. Many "natural" watercourses have in some respects been altered by acts of man. The phrase "natural origin" also includes a natural watercourse that has in some measure been so altered. Widening, narrowing, deepening or straightening the natural channel, or changing the course in part, are alterations that do not change its classification as a watercourse. Likewise the addition of water that, but for the act of man, would never have become part of the stream, does not destroy its character as a natural watercourse. These changes may, however, affect the legal relations of persons who perform or may be affected by those acts.

RESTATEMENT (SECOND) OF TORTS § 841 comment h (1979).

that which nature has provided, and the discharge is thereby made to fall upon a different place and in a different manner, so as to cause damage to the owner of the servient tenement, the owner of the superior or dominant tenement would be liable.' ") (citation omitted). Thus, a landowner in urban areas is liable for the effects of surface waters only where he either (a) artificially diverts the water from its natural channel, or (b) unreasonably or unnecessarily increases the quantity or changes the quality of water discharged from his property. *Fazio* at 513; *LaForm* at 1378–1379.

■ In the instant case, the deposition testimony of Robert Fawcett clearly establishes the area in question was flooded by surface waters, and that sediment was deposited in the streamway by natural forces, both before and after DOT made improvements to SR48 at that site. Thus, there is absolutely no indication that DOT either artificially diverted the water flowing in the streamway of Long Run Creek from its natural channel, or that DOT unreasonably or unnecessarily increased the quantity of water flowing in the streamway of Long Run Creek. As a result, DOT is not liable for the flooding caused by the water which flowed in the natural channel of Long Run Creek.[16,17] As the instant action fails to allege a negligent act for which damages would be recoverable un-

16. *See, e.g., Snap–Tite, Inc.,* 811 A.2d at 1106 ("[T]he case *sub judice* does not involve the artificial diversion of surface waters. The evidence shows that the flooding that occurred on Snap–Tite's property was a result of the natural flow of water through the watershed accumulating on the southern side of the railroad tracks that acted like a dam during heavy rainfall ... Thus, according to expert testimony, nearly all of the rainwater that fell during the two storms and flowed onto Snap–Tite's property would eventually have arrived there at some point even if the Township had not established a storm water management system ..."); *Fazio* at 513–514 ("[P]ursuant to Section 368 of the Restatement, [relating to dangerous conditions to travelers on an adjacent highway,] the dangerous condition for which an adjoining landowner may be held liable must be an artificial condition created by the landowner and not merely the natural contour of the land, albeit the contour of the land is now covered by macadam. As the trial court found, Fazio failed to point to any evidence which would indicate that the grade of the property was artificial, that it differed from the natural channel of water flow within the Borough, or that the Defendants did anything to increase the quantity of water otherwise flowing into the alleyway ..."); *LaForm,* 499 A.2d at 1382 ("[T]hus, where the factors of artificial diversion or unreasonable or unnecessary increase are not present, a landowner is under no duty to tame the surface waters flowing over his

land. Failure to control the surface waters discharged through a natural channel as a result of the ordinary and reasonable development of the land is not negligence. Accordingly, this was not a proper basis upon which to find the City negligent in this case.").

17. It should be noted that Section 418 of the State Highway Law, Act of June 1, 1945, P.L. 1242, *as amended,* 36 P.S. § 670–418 provides, in pertinent part:

The department shall have authority to enter upon private property adjacent to or in the vicinity of highways ... constructed or maintained in whole or in part by the Commonwealth, or any highway ... under the jurisdiction of the department, and change or protect existing stream channels, where it is deemed advisable, in order to protect improved highways ... within the limits of any borough, incorporated town, or township, from damage due to erosion or high water. Any such change to an existing stream channel shall first be approved by the Department of Forests and Waters ...

However, this Section should not be construed as imposing upon DOT a duty with respect to a particular landowner, or to create a cause of action. *See, e.g., Huber v. Department of Transportation,* 122 Pa.Cmwlth. 82, 551 A.2d 1130, 1133 (1988), *petition for allowance of appeal denied,* 525 Pa. 637, 578 A.2d 931 (1989) ("[W]e decline to hold that the above-referenced statutory provisions of

**1254**

der the common law or by statute, the trial court did not err in granting DOT's motion for summary judgment. Section 8522(a) of the Judicial Code, 42 Pa.C.S. § 8522(a); *Crockett.*

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this *14th* day of *February*, 2003, the order of the Court of Common Pleas of Allegheny County, dated April 26, 2001 at Nos. GD 98–6926 and GD 98–9848, is affirmed.

[Section 2002] of the Administrative Code[, Act of April 9, 1929, P.L. 177, as amended, 71 P.S. § 512,] and [Section 407] of the State Highway Law[, 36 P.S. § 670–407,] impose a duty on DOT *with respect to Appellants* or create a cause of action. To the contrary, we believe that these statutory provisions impose a duty on DOT *on behalf of the general public* to clear snow and ice on state highways.") (emphasis in original).