**Czarkowski v. Jennings**

C.P. of Lackawanna County, No. 13 CV 5188

*Michael R. Mey,* for plaintiffs.
*Brigid E. Carey* and *Edward S. Neyhart,* for defendant.

NEALON, *J.,* November 18, 2013—Glenburn Township property owners have filed a motion for a preliminary injunction seeking to enjoin their neighbor from asserting any interest in a six foot portion of the twelve foot wide alley which separates their properties, and to bar that neighbor from entering or using six feet of the alley which is allegedly owned by them. The movants assert that as abutting landowners, they have acquired title in fee to one-half of the alley pursuant to 36 P.S. § 1961, and that their neighbor has trespassed and caused irreparable water damage to their property by performing excavation activity within that alley.

Based upon the credible evidence presented, the movants have not adequately established that they possess title in fee to the center of the alley, or that their neighbor does not, at a minimum, have an implied easement right with respect to the entire alley. Furthermore, the movants failed to demonstrate that their water damage was caused by their neighbor's trespass or tortious conduct, and that their alleged harm is irreparable. Consequently, their request for injunctive relief will be denied and the special, *ex parte* injunction granted on September 23, 2013, will be dissolved.

## I. PROCEDURAL HISTORY

On September 23, 2013, plaintiffs, Paul Czarkowski and Roberta J. Czarkowski ("the Czarkowskis"), filed a complaint against defendant, David Jennings ("Jennings"), charging Jennings with trespass onto their property, seeking to recover compensatory and punitive damages for surface water runoff damage allegedly caused by Jennings' removal of a berm on their land, and requesting that Jennings "be preliminary and permanently enjoined from asserting any possessory, legal or equitable interest in the subject property." (Docket entry no. 1 at pp. 2-3). On that same date, the Czarkowskis filed a "motion for preliminary injunction" in which they averred that Jennings had "trespassed and caused damage to [the Czarkowskis'] property with the use of excavating equipment, most notably removing a berm to the rear of [their] property which controlled water and sedimentation runoff." (Docket entry no. 3 at ¶¶ 1-2). The Czarkowskis further alleged that they had "suffered water and sedimentation damage to their property due to [Jennings'] actions," and seek "to exercise control of this property and repair the damage caused by [Jennings] without [Jennings']

continued trespassing and interference." (*Id.* at ¶¶ 3-4).

Based upon the finding "that immediate and irreparable injury will be sustained before notice can be given or a hearing held," a special injunction under Pa.R.C.P. 1531(a) was granted on September 23, 2013, and Jennings was "immediately ordered to remove any and all equipment from [the Czarkowskis'] property and to no longer trespass on [the Czarkowskis'] six feet of the undeveloped alley, which abuts both [parties'] property, until further order of court." (Docket entry no. 5). The Czarkowskis were directed to post bond or deposit legal tender pursuant to Pa.R.C.P. 1531(b), and since the special injunction had been issued on an *ex parte* basis, a hearing on the Czarkowskis' request for a preliminary injunction was scheduled for September 30, 2013, in accordance with Pa.R.C.P. 1531(d). (Docket entry no. 4).

During the hearing on September 30, 2013, testimony was presented by plaintiff, Paul Czarkowski, and a title searcher, Gino V. Mori. In addition, the Czarkowskis introduced eight exhibits and Jennings offered nine exhibits into evidence. At the request of the parties, the record remained opened until October 7, 2013, and Jennings filed a "submittal" and "supplemental submission" on that date. (Docket entry nos. 9-10). The Czarkowskis filed their response to those submissions on October 11, 2013, and Jennings submitted a "rebuttal brief" on October 15, 2013. (Docket entry nos. 13-14). Following Jennings' filing of his answer to the Czarkowskis' motion for a preliminary injunction on October 18, 2013, this matter became ripe for disposition. (Docket entry no. 17).

When considering requests for injunctive relief, the trial judge acts as the factfinder and makes credibility determinations in resolving any conflicts in the evidence

presented. *See Shepherd v. Pittsburgh Glass Works, LLC*, 25 A.3d 1233, 1245 (Pa. Super. 2011); *Hunter v. Bowman*, 159 Pa. Cmwlth. 222, 225-226, 633 A.2d 655, 656 (1993). As the factfinder who personally heard the witnesses testify, the trial judge is "in the sole position to observe the demeanor of the witnesses and assess their credibility." *Hirsch v. EPL Technologies, Inc.*, 910 A.2d 84, 88 (Pa. Super. 2006), *app. denied*, 591 Pa. 727, 920 A.2d 833 (2007). As a result, the trial judge "may believe all, part or none of the evidence presented." *Ruthrauff, Inc. v. Ravin, Inc.*, 914 A.2d 880, 888 (Pa. Super. 2006), *app. denied*, 599 Pa. 711, 962 A.2d 1197 (2008); *Rizzo v. MSA, Inc.*, 18 Pa. D. & C. 5th 233, 245 (Lacka. Co. 2010), *aff'd*, 32 A.3d 830 (Pa. Super. 2011). The factual findings set forth in section II below are based upon the evidence which has been deemed to be competent, credible and relevant.

## II. FINDINGS OF FACT

In April 1925, a licensed surveyor, A. E. Seamans, surveyed the "South Ackerly" plot in Glenburn Township that was owned and developed by Archibald R. Stetler. (Plaintiffs' exhibit no.1; defendant's exhibit no. 8). The survey map of the South Ackerly plot was later recorded on September 8, 1953, in Lackawanna County Map Book 7 at page 136. (*Id.*). Lots 23 through 42 of the South Ackerly plot are fronted by Farview Avenue and abutted in the rear by an unnamed, twelve foot wide alley. (*Id.*). Lots 43 through 57 of that development are fronted by Arch Avenue and abutted in the rear by the same twelve foot wide alley. (*Id.*).

The Czarkowskis are the current owners of Lots 43, 44, 45 and 46 in the South Ackerly plot, and Jennings is the present owner of Lots 40 and 41. (Plaintiffs' exhibit no. 2; docket entry nos. 13-14). The rear portions of the

Czarkowskis' Lots 45 and 46 and Jennings' Lots 40 and 41 are separated by the unnamed, twelve foot wide alley depicted on A.E. Seamans' survey of the South Ackerly plot that was recorded on September 8, 1953. (Plaintiffs' exhibit no.1; defendant's exhibit no. 8). The deeds of conveyance in the Czarkowskis' chain of title all identify Lots 45 and 46 as "being each Fifty (50) feet in front on Arch Avenue, One Hundred Fifty (150) feet in depth, and rectangular in shape, with an alley in the rear Twelve (12) feet in width as shown on said [South Ackerly] Plot." (Docket entry no. 9 at pp. 12, 27, 31, 36). Although certain streets in the South Ackerly plot have been formerly dedicated to Glenburn Township or otherwise used by the public, the unnamed alley separating the rear portions of the Czarkowskis' Lots 45 and 46 and Jennings' lots 40 and 41 has never been opened to the public and has become a wooded area containing brush and other vegetation. (Plaintiffs' exhibits nos. 3-7; defendant's exhibit nos. 2-5, 9).

In early September 2013, Jennings admittedly engaged in excavating or landscaping activity in the twelve foot wide alley separating the rear portions of Lots 45 and 46 and Lots 40 and 41. (Plaintiffs' exhibit nos. 5, 6). The Czarkowskis contend that Jennings removed a supporting berm in the process, but pre-September 2013 photographs of the subject alley do not reflect the presence of such a berm. (Defendant's exhibit nos. 2, 9). On September 11, 2013, Lackawanna County experienced a torrential rain storm which caused flash flooding and power outages throughout the county. The Czarkowskis allege that Jennings' purported removal of a berm caused them to suffer water and sedimentation damage to their property on September 11, 2013, but the photographic evidence

introduced by the parties indicates that the nature, extent and cause of that damage are unclear. (Plaintiffs' exhibit nos. 7-8; defendant's exhibit no. 4). Furthermore, no evidence has been produced of any continuing trespass or further damage that has been caused to the Czarkowskis' property during any rainfall subsequent to the severe storm on September 11, 2013.

The Czarkowskis contend that they own six feet of the twelve foot wide alley, and premise that argument upon section 1 of the act of May 9, 1889, P.L. 173, no. 192, which provides that "[a]ny...lane or alley, laid out by any person or persons in any...plot or plan of lots, on lands owned by such person or persons in case the same has not been opened to, or used by, the public for twenty-one years next after the laying out of the same, shall be and have no force and effect and shall not be opened...." 36 P.S. § 1961. Citing *Rahn v. Hess*, 378 Pa. 264, 106 A.2d 461 (1954), the Czarkowskis maintain that if a township "does not open an alley within the twenty-one (21) year period set forth in [36 P.S.] § 1961, the abutting lot owners acquire the fee in the alley to the center line." (Docket entry no.1 at ¶ 7). Based upon that reasoning, they posit that since the unnamed, twelve foot wide alley was not open to or used by the public within twenty-one years of the date that the South Ackerly plot was recorded on September 8, 1953, "each of the parties have acquired in fee one-half the width of this alley along their respective property lines." (Docket entry no. 20 at p. 4).

Jennings represented himself during the hearing on September 30, 2013, although counsel subsequently entered their appearance on his behalf and filed a series of post-hearing submissions. (Docket entry nos. 9-12, 15-17). Jennings alleges that he is the rightful owner of the

alley in question by virtue of a series of 2013 corrective conveyances from his great-grandfather, Archibald R. Stetler, who died on July 19, 1948. According to Jennings' submissions, Archibald R. Stetler executed a will on June 30, 1942, which bequeathed his "homestead property" in Glenburn Township, "together with the adjacent land owned by [him] of about eleven acres," to Stetler's daughter, Anna M. Jennings. (Docket entry no. 9 at pp. 58-59). After Stetler died on July 19, 1948, his estate was "probated in the Office of the Register of Wills of Lackawanna County to Estate no. 833 of Year 1948." (*Id.* at p. 52). On December 5, 1953, Anna M. Jennings executed a will pursuant to which she devised all of her real and personal property to her son, David J. Jennings. (*Id.* at p. 70).

No documentary or testimonial evidence was presented with respect to the probate of the estate of Anna M. Jennings following her death. Jennings has introduced a supplemental Pennsylvania Inheritance Tax Return that he filed on September 8, 2013, concerning the estate of Archibald R. Stetler which was probated sixty-five (65) years ago. In that filing, Jennings identifies himself as the "great-grandson of Archibald R. Stetler, grandson of Anna M. Jennings and son of...David J. Jennings who was the sole testamentary heir of his mother, Anna M. Jennings." (*Id.* at p. 52). Jennings states in his supplemental tax return that Archibald R. Stetler's "lands were inventoried and reported for inheritance tax purposes in [his] estate when administered in 1948," but that "[b]y inadvertence, the Executrix, Anna M. Jennings..., omitted to distribute a portion of real estate which remains in her successor, her grandson, David Jennings." (*Id.* at p. 51).

On September 9, 2013, Jennings also filed three deeds

which ostensibly conveyed to him title in fee to the subject alley. First, in his alleged capacity as "administrator d.b.n.c.t.a. of the Estate of Archibald R. Stetler," Jennings conveyed "[t]he alley on the south side of Lot 1 as shown on the [South Ackerly plot] map...being approximately 12' x 46.3'" to the "Estate of Anna M. Jennings, deceased." (Docket entry no. 10 at p. 6). The attached description of the alley conveyed identifies it as being "shown on the map prepared for David Jennings by Nicholas A. Piccini, PLS dated 8/20/2013, intended to be duly recorded in the Office of the Recorder of Deeds of Lackawanna County." (*Id.* at p. 10). The deed is entitled "deed of distribution fiduciary warranty deed," and states that it "is a deed of distribution in the Estate of Archibald R. Stetler to correct a scrivener error in the absence of the conveyance of lands described herein due to the heir, Anna M. Jennings, and is exempt from realty transfer tax." (*Id.* at pp. 6-8).

The second "deed of distribution fiduciary warranty deed" dated September 9, 2013, also purports to transfer title to the foregoing alley from "David Jennings, Administrator c.t.a. of the Estate of Anna M. Jennings, also known as Anna Mae Jennings, deceased" to "David J. Jennings, widower." (*Id.* at pp. 15-22). The final deed dated September 9, 2013, reportedly conveys the same 12' x 46.3' alley from "David J. Jennings, widower," to "David Jennings and Gretchen Jennings." (*Id.* at pp. 24-32). The stated consideration in all three deeds is $1.00. (*Id.* at pp. 6, 15, 24). Based upon the tripartite conveyances on September 9, 2013, Jennings submits that he cannot be liable to the Czarkowskis for trespass or injunctive relief since "[t]he alley is not the [Czarkowskis'] and never can be." (*Id.* at p. 4).

In his supplemental submission, Jennings further asserts

that the Czarkowskis' reliance upon *Rahn* is misplaced since it stands for the proposition that abutting property owners acquire title in fee to the middle of a roadway identified as a boundary in a deed only when the boundary is a public street or highway. (Docket entry no. 10 at pp. 3-4). Jennings maintains that where the deed descriptions refer to an alley as the boundary, rather than a public street or highway, the abutting property owner does not obtain title in fee to the center of it, and instead simply acquires an easement by implication or right-of-way over that alley. (*Id.* at pp. 2, 5-6). Thus, a threshold determination must be made regarding the parties' respective rights relative to the twelve foot wide alley.

## III. DISCUSSION

### (A) STANDARD OF REVIEW

The elements necessary to establish entitlement to a preliminary injunction are: (1) immediate and irreparable harm in the absence of an injunction; (2) greater injury will result from refusing an injunction than from granting it; (3) an injunction will restore the parties to the status quo that existed immediately prior to the wrongful conduct; (4) the proponent's right to relief is clear; (5) the injunction is reasonably suited to abate the offending activity; and (6) the preliminary injunction will not adversely affect the public interest. *Wyland v. West Shore School District,* 52 A.3d 572, 582 (Pa. Cmwlth. 2012); *American Homecare Supply Mid-Atlantic, LLC v. Gannon,* 10 Pa. D. & C. 5th 362, 375 (Lacka. Co. 2009). Harm is considered to be irreparable if it cannot be adequately compensated by an award of damages. *See Duquesne Light Co. v. Longuevue Club,* 63 A.3d 270, 275 (Pa. Super. 2013). "An injury is 'irreparable,' as that term is contemplated in the context of a preliminary injunction, if it will cause damage which

can be estimated only by conjecture and not by an accurate pecuniary standard." *Ambrogi v. Reber*, 932 A.2d 969, 978 n.5 (Pa. Super. 2007), *app. denied*, 597 Pa. 725, 952 A.2d 673 (2008).

To demonstrate that its right to relief is clear, the plaintiff "must show that it is likely to prevail on the merits." *Duquesne Light Company, supra*, "For a right to relief to be clear, it must be more than merely 'viable' or 'plausible.'" *Ambrogi*, 932 A.2d at 980. Moreover, "[i]t is important to recognize that 'for a preliminary injunction to issue, every one of the prerequisites must be established; if the petition fails to establish any one of them, there is no need to address the others." *Shogan v. Com., Bureau of Commissions, Elections and Legislation*, 938 A.2d 1132, 1134-1135 (Pa. Cmwlth. 2007) (quoting *Summit Town Centre, Inc. v. Shoe, Show of Rocky Mount, Inc.*, 573 Pa. 637, 646, 828 A.2d 995, 1001 (2003)).

(B) THE PARTIES' PROPERTY RIGHTS REGARDING THE ALLEY

Jennings contends that as a result of the supplemental inheritance tax return and deeds that he filed on September 8, 2013, and September 9, 2013, he is the owner of the 12' x 46.3' alley in dispute, and is free to conduct excavation activities on that land that he allegedly owns. The Czarkowskis' submit that by operation of the twenty-one year limitation period set forth in the act of 1889, they have acquired title in fee to the center of the alley, such that Jennings may not trespass upon the six foot portion of that alley which is ostensibly owned by the Czarkowskis.

In the seminal decision in *Rahn*, property owners sought to enjoin their neighbors from blocking access to streets that were originally identified on a duly filed plot map,

but which had "not been physically opened or used by the public as public ways for a period of twenty-one years." *Rahn*, 378 Pa. at 267, 106 A.2d at 462. The Supreme Court of Pennsylvania interpreted 36 P.S. § 1961 as establishing a statute of limitation of twenty-one years within which an acceptance of a road by the public must occur. *Id.* at 268, 106 A.2d at 463. The *Rahn* Court concluded that if the street is not used as a public road for twenty-one years, the servitude imposed upon neighboring landowners for use of that street as a public road is removed. *Id.* at 269, 106 A.2d at 463-464.

Not unlike Jennings, certain landowners in *Rahn* argued that title to those streets that were designated in the filed map remained in the original developer or subdivider who still had "the option of rededicating the streets to public use or retaining the fee in himself" at the end of the twenty-one year period. *Id.* at 269, 106 A.2d at 464. The Supreme Court characterized that argument as "untenable," and found that the original developer had "divested himself" of ownership to the streets by conveying lots to grantees and, therefore, "had no fee to 'rededicate'" or retain once the streets had not been physically opened or used by the public for twenty-one years. *Id.* at 269-270, 106 A.2d at 464. *Accord Ferko v. Spisak*, 373 Pa. Super. 303, 308, 541 A.2d 327, 329 (1988) (discussing *Rahn* as holding that "the abutting lot owners acquired the fee in the streets" and that "the subdivider had divested himself of title to the streets...and had no fee to rededicate."), *aff'd*, 522 Pa. 503, 564 A.2d 157 (1989).

Jennings' claim that he is the owner of the twelve foot wide alley is of dubious merit. By recording the South Ackerly plot map on September 8, 1953, which plan incorporated the various streets and alleys identified on

that map, Archibald R. Stetler extended an offer to dedicate those streets and alleys for public use. *See Ott v. Reager*, 313 Pa. Super. 365, 370, 459 A.2d 1272, 1275 (1983). Once twenty-one years elapsed without an acceptance of those roads and alleys by Glenburn Township, Archibald R. Stetler and his heirs were divested of any ownership interest in the streets and alleys and retained no fee in that land. *See Rahn*, 378 Pa. at 269-270, 106 A.2d at 464; *Ferko*, 373 Pa. Super. at 308, 541 A.2d at 329. As a result, the supposed correction of a "scrivener error" sixty-five years after the probate of the estate of Archibald R. Stetler is of no legal consequence.

The Supreme Court in *Rahn* also addressed the argument which is currently being advanced by the Czarkowskis, i.e., that they acquired title in fee to the center of the twelve foot wide alley which is identified as a boundary line in their deed. To that end, the court stated:

> It is settled law in Pennsylvania that where the side of a street is called for as a boundary in a deed, the grantee takes title in fee to the center of it, if the grantor had title to that extent, and did not expressly or by clear implication reserve it.

*Rahn*, 378 Pa. at 270, 106 A.2d at 464. *See also Zaloga v. Borough of Moosic*, 2011 WL 29383422, at * 17 (M.D. Pa. 2011) ("Where a municipality does not open the street within the twenty-one year period set forth in Section 1961, the abutting lot owners acquire the fee in the street to the center line."). Both the Superior Court and the Commonwealth Court have subsequently recognized and applied the above-quoted principle of law. *See Ferko*, 373 Pa. Super. at 310, 541 A.2d at 330 ("Since the eastern side of Franklin Street was called for as the Ferkos'

western boundary, *Rahn* directs the conclusion that title to the center of Franklin Street passed to the Ferkos."); *Leininger v. Trapizona*, 165 Pa. Cmwlth. 493, 498, 645 A.2d 437, 440 (1994) ("Where a municipality does not open the street within the twenty-one year period set forth in section 1961, the abutting lot owners acquired the fee in the street to the center line.").

In addition to holding that an abutting property owner acquires title in fee to the center of a street which is identified as a boundary in a deed, but not used by the public for twenty-one years, the Supreme Court in *Rahn* considered "whether the Act of 1889 terminated private easements as well as public rights in the street." *Rahn*, 378 Pa. at 271, 106 A.2d at 464. Distinguishing "between the public right of passage over dedicated streets and the individual...private contractual rights resulting as a legal consequence from the implied covenants under which the grantees purchased" their abutting property, the court found "nothing contained within the provisions of the act of 1889 denoting any intent to affect purely private rights." *Id.* at 271-272, 106 A.2d at 464-465. Thus, it concluded that "[t]he individual purchasers of lots...acquired rights which are entitled to protection, unless in some legally recognized way the easement has been surrendered." *Id.* at 271-272, 106 A.2d at 465. More recent decisional precedent has similarly reasoned that "while a public easement or right of use in such roads is lost as a result of the passage of time and lack of use, the purely private rights of easement of individual property owners in the plan of lots to use the road is not extinguished." *Leininger*, 165 Pa. Cmwlth. at 498-499, 645 A.2d at 440 (citing *Riek v. Binnie*, 352 Pa. Super. 246, 507 A.2d 865 (1986)). *Accord Ferko*, 373 Pa. Super. at 310, 541 A.2d at 330 (citing *Riek* and stating that

"the parties' ownership interests in the land comprising Franklin Street are subject to each other's rights to travel the street.").

Cases addressing ownership interests of abutting property owners recognize a distinction between boundaries that are public streets, as opposed to driveways. In his post-hearing submissions, Jennings cites *Vinso v. Mingo*, 162 Pa. Super. 285, 57 A.2d 583 (1948), in which the Superior Court stated that "[w]here a street called for a boundary in a deed is not a highway nor dedicated to public use, the grantee does not take title in fee to the center of it, but by implication acquires an easement, or right of way over the lands." *Id.* at 288, 57 A.2d at 584 (citing *Andreas v. Steigerwalt*, 29 Pa. Super. 1, 4 (1905)). Later decisions of the Supreme Court and the Superior Court have also acknowledged the creation of such an easement by implication, rather than title in fee to the center, "where descriptions in a deed refer to a driveway as a boundary, which is not a highway or dedicated to public use..." *McAndrews v. Spencer*, 447 Pa. 268, 270-271, 290 A.2d 258, 259 (1972) (citing *vinso* and *Andreas*); *Auman v. Grimes*, 364 Pa. Super. 243, 246, 527 A.2d 1045, 1046-1047 (1987) (same).

Appellate authority has arguably reached conflicting conclusions when addressing ownership interests relating to unopened alleys, as opposed to public streets or private driveways. In *Taylor v. Gross*, 195 Pa. Super. 225, 171 A.2d 613 (1961), the Superior Court considered the parties' claims with respect to a fifteen foot alley that was described as a boundary in the pertinent deeds. The *Taylor* court cautioned that "[i]t is not necessary for a decision in this case to determine where title lies to the 15-foot alley," since "[t]his action is primarily concerned with the

question of the right of users of that alley." *Id.* at 229, 171 A.2d at 616. Nevertheless, in discussing the "settled law in this state that when a public street or highway is called for as a boundary in a deed, the grantee takes title in fee to the middle of the street," it's stated that "[t]his is not so, however, where the street called for as a boundary is not a public highway but rather a private, unopened alley or way." *Id.* at 231-232, 171 A.2d at 617.

More than forty years after *Taylor*, the Superior Court appeared to fashion a contrary result in *Murphy v. Martini*, 884 A.2d 262 (Pa. Super. 2005). In that case, the parties sought to litigate their property rights relative to an "unopened road and alley." *Id.* at 265. In determining "whether the road and alley in this case were dedicated to public use," the Superior Court noted that "'[i]ncorporation of streets and alleys into a plan, recorded or unrecorded, constitutes an offer to dedicate these streets and alleys for use by the public." *Id.* (quoting *Ott, supra*). After finding "that the road and alley were never accepted by the municipality" such that "the public's right of use was extinguished," the *Murphy* court held:

> The unopened road and alley are named boundaries for parts of Appellant's assignor's properties. Consequently, she is entitled to legal title to the center line of the road and alley on those portions of which her land abuts the road and alley.

*Id.* at 266. Interestingly, several trial courts have relied upon *Rahn* and *Murphy* in support of their contrasting conclusions (1) that landowners whose property abuts an alley acquire fee titles extending to the center of the alley, *see, e.g., Bigas-Valedon v. McIlvane*, 2013 WL 2896321, at *3 (Phila. Co. 2013) ("Since the alley is not a public street

and pursuant to the dictates of *Rahn v. Hess*, 106 A.2d 461 (Pa. 1954), plaintiffs were awarded ownership of the alley in question in fee simple, extending from their original property line to the middle of the alley."), and (2) that the abutting property owners merely secure a private easement right over the alley. *See, e.g., Davidson v. Graefe*, 2008 WL 7427196, at *4 (Chester Co. 2008) ("The foregoing cases also make clear that the Township's vacation of the alley...resulted in an automatic and simultaneous private right of easement in the plaintiffs and defendant over their otherwise unencumbered fee titles extending to the center of the alley").

In their "motion for preliminary injunction," the Czarkowskis seek to enjoin Jennings from asserting any interest in one-half of the subject alley, to bar him "from entering upon" that portion of the alley, and to extend the emergency injunction requiring him to remove all equipment from that location. To obtain that relief, the Czarkowskis must demonstrate that Jennings has no express or implied right to use or enter upon the alley. Although the general public's right of use of the alley was extinguished in 1974 by the Act of 1889, the parties' easement rights arising from the implied covenants contained in their deeds remain operable. *See Rahn*, 378 Pa. at 271-272, 106 A.2d at 465; *Leininger*, 165 Pa. Cmwlth. at 498-499, 645 A.2d at 440. Hence, even if the Czarkowskis have acquired title in fee to six feet of the twelve foot wide alley, such ownership is subject to Jennings' implied easement or right-of-way.

In light of the seemingly divergent rulings by the Superior Court in *Murphy* and *Taylor*, it is unclear whether the Czarkowskis possess fee title to the center of the unnamed alley or merely easement rights with respect

to that alley. The pertinent case law clearly states that such fee title exists in situations involving public streets, as opposed to private driveways or courts. However, Supreme Court precedent consistently holds that "[w]here the street called for as a boundary is not a public highway nor dedicated to public use, the grantee acquires an easement by implication over it." *Justin J. Powell, Inc. v. Wian*, 456 Pa. 35, 41, 318 A.2d 346, 350 (1974). An unopened alley is more akin to a driveway or court than a public highway or street. Based upon the decisional authority discussed above, the Czarkowskis have not established that they are likely to prevail on the merits of their argument that Jennings possesses no rights relative to the alley since the Czarkowskis allegedly have title in fee to the center of it.

At a minimum, Jennings has a non-possessory, easement interest entitling him to use or enjoyment of the alley even if another party has a fee simple, possessory interest in that land. *See In re Condemnation Proceeding by South Whitehall Township Authority*, 940 A.2d 624, 628 (Pa. Cmwlth. 2008). In Pennsylvania, "[t]he law is settled that those who have the same rights over an easement must exercise those rights fairly and reasonably so as not to interfere with the fair and reasonable exercise of the same rights by others who possess them." *Puleo v. Bearoff*, 376 Pa. 489, 492, 103 A.2d 759, 761 (1954). Since the Czarkowskis have not demonstrated that Jennings may be enjoined from using the alley or "asserting any possessory, legal or equitable interest in the subject property," (Docket entry no. 3 at p. 2), their "motion for preliminary injunction" must be denied.

## (C) TRESPASS RELIEF

The gravamen of the Czarkowskis' claim for injunctive relief is that Jennings has trespassed onto their land and

committed irreparable harm in the process. One who intentionally enters the property of another without the privilege to do so is chargeable with trespass. *Kopka v. Bell Telephone Company of Pennsylvania*, 371 Pa. 444, 450, 91 A.2d 232, 235 (1952). To succeed with a trespass claim, "there must be in the plaintiff either actual possession or the right to immediate possession flowing from the right of property; and [s]he must have been deprived of it by the tortious act of another." *Florig v. Estate of O'Hara*, 912 A.2d 318, 327 n. 13 (Pa. Super. 2006), *app. denied*, 593 Pa. 740, 929 A.2d 1162 (2007).

In addition to their failure to establish their right to immediate possession of one-half the alley, the Czarkowskis have neglected to present credible evidence of actual harm caused by Jennings' tortious activity. The photographic evidence does not establish the presence of a berm which the Czarkowskis claim was later removed by Jennings. Nor did the credible proof demonstrate that the surface water and sedimentation damage alleged by the Czarkowskis was caused by Jennings' excavation activity, rather than the natural flow of surface water during a heavy rainstorm. As such, the Czarkowskis have not established any actionable trespass on the part of Jennings. *See Shamnoski v. PG Energy, Div. of Southern Union Co.*, 569 Pa. 652, 680, 858 A.2d 589, 606 (2004) (holding that responsibility for water damage "cannot lawfully be assigned to appellant" since "it was only the natural flow of excess water produced by the storm which proceeded down through the natural watercourse and caused the damage to appellees' properties.").

(D) ABSENCE OF IRREPARABLE HARM

Assuming arguendo that the Czarkowskis had established that their ownership right to six feet of the

unnamed alley was clear, and that they suffered water damage as a result of Jennings' trespass onto that land, they nonetheless would not be entitled to injunctive relief. The Czarkowskis may secure a preliminary injunction only upon a showing that their harm is irreparable since they do not have an adequate remedy at law. As stated above, the Czarkowskis seek to recover compensatory and punitive damages from Jennings for water damage that they have allegedly suffered.

It is long established in this Commonwealth that a landowner may grade and improve property "without liability for an incidental effect upon adjoining property even though there may result some additional flow of surface water thereon through a natural watercourse, but he may not, by artificial means, gather the water into a body and precipitate it upon his neighbor's property." *Westbury Realty Corp. v. Lancaster Shopping Center*, 396 Pa. 383, 387, 152 A.2d 669, 671-672 (1959). Additionally, an owner of upper land may not unreasonably increase the quantity of water or change the quality of water discharged upon a lower landowner. *Colombari v. Port Authority of Allegheny Co.*, 951 A.2d 409, 413 (Pa. Cmwlth. 2008); *Tom Clark Chevrolet, Inc. v. Dept. of Environmental Protection*, 816 A.2d 1246, 1253 (Pa. Cmwlth. 2003), *app. denied*, 574 Pa. 763, 831 A.2d 601 (2003). To obtain injunctive relief against a neighboring landowner based upon the discharge of surface water onto property, the party seeking injunctive relief is generally required to establish a continuing trespass which reoccurs with each rainfall. *See St. Andrew's Evangelical Lutheran Church of Audubon v. Township of Lower Providence*, 414 Pa. 40, 43, 198 A.2d 860, 862 (1964); *Staffaroni v. City of Scranton*, 153 Pa. Cmwlth. 188, 192, 620 A.2d 676, 678 (1993);

*Township of West Carroll v. Wintz*, 2009 WL 8753090, at *3 (Cambria Co. 2009).

The Czarkowskis have only produced evidence of a single instance of water damage following an exceedingly heavy rainstorm on September 11, 2013. While "[e]quity may enjoin repeated and continuing trespasses," *Rogoff v. Buncher Company*, 395 Pa. 477, 480, 151 A.2d 83, 86 (1959), it is not appropriate to enjoin a single trespass which has not reoccurred. *See Kramer v. Slattery*, 260 Pa. 234, 238, 103 A. 610, 611 (1918) ("Equity will not restrain by injunction the commission of a mere, ordinary, or naked trespass; but jurisdiction to enjoin the commission of what is known as a continued or continuing trespass is now well established."); *Bradley v. Valicenti*, 185 Pa. Super. 403, 407, 138 A.2d 238, 240 (1958) ("Equity is the special forum for relief where there has been a trespass or nuisance of a continuing and permanent character."). The record indicates that to the extent that the Czarkowskis may prove that their single occasion of water damage was attributable to Jennings' tortious conduct, they have an adequate remedy at law in the form of compensatory damages for that sole trespass. Accordingly, due to the Czarkowskis' failure to establish that their harm is irreparable, they are not entitled to their requested injunctive relief. An appropriate order follows.

## ORDER

And now, this 18th day of November, 2013, upon consideration of the "motion for preliminary injunction" filed by plaintiffs, Paul Czarkowski and Robert J. Czarkowski, the credible evidence introduced during the hearing, and the legal arguments contained in the parties' post-hearing submissions, and based upon the factual findings and legal conclusions set forth in the foregoing

324

Memorandum, it is hereby ordered and decreed that:

1. Plaintiffs' motion for a preliminary injunction is denied; and

2. Pursuant to Pa.R.C.P. 1531(e), the special injunction issued on September 23, 2013, is dissolved.